*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ELLEN M. ANDARY, a Legally Incapacitated Person, by and through her Conservator and Guardian, MICHAEL T. ANDARY, M.D., PHILIP KRUEGER, a Legally Incapacitated Person, by and through his Guardian, RONALD KRUEGER, and MORIAH, INC., doing business as EISENHOWER CENTER,

Plaintiffs-Appellants,

v

USAA CASUALTY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA,

Defendants-Appellees.

FOR PUBLICATION
August 25, 2022

No. 356487
Ingham Circuit Court
LC No. 19-000738-CZ

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

MARKEY, P.J. (*dissenting*).

I respectfully dissent. Pursuant to 2019 PA 21 and 2019 PA 22, our Legislature made sweeping changes to the Michigan no-fault act, MCL 500.3101 *et seq.*, which became effective June 11, 2019. This appeal concerns the application of some of those amendments, specifically the added language in MCL 500.3157(2), (7), and (10), to circumstances in which accidental bodily injuries arising from automobile accidents were sustained before the effective date of the no-fault amendments. MCL 500.3157, as amended by 2019 PA 21, sets forth fee schedules and otherwise places limitations with respect to the payment of personal protection insurance (PIP) benefits. These schedules and limitations did not previously exist. In their complaint, plaintiffs raised challenges to the amendatory legislation under the Michigan Constitution. The trial court granted summary disposition under MCR 2.116(C)(8) in favor of defendants, USAA Casualty Insurance Company (USAA) and Citizens Insurance Company of America (Citizens), concluding, as a matter of law, that there was no violation of due process, Const 1963, art 1, § 17, no violation of equal protection, Const 1963, art 1, § 2, and no violation of the Contracts Clause, Const 1963, art 1, § 10. The court also denied plaintiffs' motion to amend their complaint. On appeal, plaintiffs

-1-

argue that the trial court's rulings were erroneous. Plaintiffs additionally raise a new argument, contending that the amendment of MCL 500.3157 should not be applied retroactively to reach motor-vehicle accidents that occurred before June 11, 2019, because the Legislature expressed no such intent. The majority agrees with plaintiffs' newly formed argument on retroactivity and with their claim regarding the Contracts Clause. I conclude that the legislative changes made to MCL 500.3157 apply to automobile accidents that occurred before June 11, 2019. I would also find that plaintiffs' constitutional claims fail. Accordingly, I would affirm the trial court's ruling granting summary disposition to defendants.

## I. STANDARD OF REVIEW[1]

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo questions concerning the interpretation and application of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). This Court similarly reviews de novo issues regarding the constitutionality of a statute. *Makowski v Governor*, 495 Mich 465, 470; 852 NW2d 61 (2014).

## II. SUMMARY DISPOSITION PRINCIPLES UNDER MCR 2.116(C)(8)

In *The Gym 24/7 Fitness, LLC v Michigan*, ___ Mich ___,___; ___ NW2d ___ (2022); slip op at 8, this Court articulated the principles that govern review of a motion for summary disposition brought under MCR 2.116(C)(8):

> The issues raised on appeal also implicate MCR 2.116(C)(8), which provides for summary disposition when a "party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8) tests the legal sufficiency of a complaint. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). In rendering its decision under MCR 2.116(C)(8), a trial court may only consider the pleadings. *Id*. The trial court must accept as true all of the factual allegations in the complaint. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380-381; 563 NW2d 23 (1997). "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie*, 465 Mich at 130.

## III. MCL 500.3157

In 2019, the Michigan Legislature enacted 2019 PA 21 and 2019 PA 22, comprehensively amending the no-fault act. Relevant for our purposes was the overhaul of MCL 500.3157, which before the amendment provided in full as follows:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a *reasonable amount* for the

---

[1] I agree with the majority's discussion regarding the factual and procedural history of the litigation.

products, services and accommodations rendered. The charge shall not exceed the amount the person or institution *customarily charges* for like products, services and accommodations in cases not involving insurance. [1972 PA 294 (emphasis added).]

The amendment of MCL 500.3157 by the Legislature under 2019 PA 21 added fee schedules and limitations with respect to the payment of PIP benefits, providing, in pertinent part:

(2) Subject to subsections (3) to (14), a physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement under this chapter for more than the following:

(a) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 200% of the amount payable to the person for the treatment or training under Medicare.

(b) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 195% of the amount payable to the person for the treatment or training under Medicare.

(c) For treatment or training rendered after July 1, 2023, 190% of the amount payable to the person for the treatment or training under Medicare.

\* \* \*

(7) If Medicare does not provide an amount payable for a treatment or rehabilitative occupational training under subsection (2), (3), (5), or (6), the physician, hospital, clinic, or other person that renders the treatment or training is not eligible for payment or reimbursement under this chapter of more than the following, as applicable:

(a) For a person to which subsection (2) applies, the applicable following percentage of the amount payable for the treatment or training under the person's charge description master in effect on January 1, 2019 or, if the person did not have a charge description master on that date, the applicable following percentage of the average amount the person charged for the treatment on January 1, 2019:

(*i*) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 55%.

(*ii*) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 54%.

(*iii*) For treatment or training rendered after July 1, 2023, 52.5%.

\* \* \*

-3-

(10) For attendant care rendered in the injured person's home, an insurer is only required to pay benefits for attendant care up to the hourly limitation in section 315 of the worker's disability compensation act of 1969, 1969 PA 317, MCL 418.315.[2] This subsection only applies if the attendant care is provided directly, or indirectly through another person, by any of the following:

(a) An individual who is related to the injured person.

(b) An individual who is domiciled in the household of the injured person.

(c) An individual with whom the injured person had a business or social relationship before the injury.

## IV. ALLEGED RETROACTIVE APPLICATION

In determining whether a statutory enactment should be applied prospectively or retroactively, the overriding rule of construction is that the intent of the Legislature governs, and all other rules of interpretation and operation are subservient to this principle. *Buhl v Oak Park*, 507 Mich 236, 243-244; 968 NW2d 348 (2021). A statute is presumed to apply prospectively only unless the Legislature clearly manifested an intent that the statute apply retroactively. *Johnson v Pastoriza*, 491 Mich 417, 429-430; 818 NW2d 279 (2012).[3] The retroactive application of a newly-enacted statute can present problems of unfairness, potentially depriving citizens of legitimate expectations or upsetting settled transactions; therefore, we have required the Legislature to make clear its intentions when it enacts a law with retroactive effect. *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 38; 852 NW2d 78 (2014). "This is especially true if retroactive application of a statute would impair vested rights, create a new obligation and impose a new duty, or attach a disability with respect to past transactions." *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001).

PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). "Personal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred." MCL 500.3110(4). Prospective expenses for future accommodations and services are not yet incurred; therefore, the insurer cannot be held liable to pay for such expected costs. *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 483-484; 673 NW2d 739 (2003). Accordingly, a motor-vehicle accident and injuries sustained therein do not trigger an immediate right to the payment of PIP benefits. Rather, it is the treatment of

---

[2] MCL 418.315(1) states, in part, that "[a]ttendant or nursing care shall not be ordered in excess of 56 hours per week if the care is to be provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons."

[3] Our Supreme Court has also stated that "[a] statute is construed to have prospective effect only unless the Legislature expressly, or impliedly, indicates its intention to give it retrospective effect." *Hughes v Judge's Retirement Bd*, 407 Mich 75, 85; 282 NW2d 160 (1979).

those injuries that gives rise to an entitlement to benefits. "It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993).

MCL 500.3157 concerns a no-fault insurer's obligation to pay for treatment or training, and, under existing Michigan law, PIP benefits to cover the cost of treatment or training accrue only when the expense is incurred, i.e., when the injured person receives the treatment or training. And the fee schedules and payment limitations in MCL 500.3157 were made applicable to treatment or training rendered in the future. Consequently, the no-fault amendments regarding the payment of PIP benefits for the costs associated with the treatment or training provided to a person who suffered accidental bodily injury operate *prospectively*. The Legislature did not make MCL 500.3157 applicable to previously-received treatment or training.

I acknowledge that treatment or training necessarily relates to an antecedent event—the underlying motor-vehicle accident. It is true, however, that "[a] statute is not regarded as operating retrospectively because it relates to an antecedent event[,]" or, in other words, "[m]erely because some of the requisites for [a statute's] application are drawn from a time antedating its passage does not constitute a law retrospective." *Hughes v Judge's Retirement Bd*, 407 Mich 75, 86; 282 NW2d 160 (1979), citing *Clearwater Twp v Kalkaska Co Bd of Supervisors*, 187 Mich 516, 521; 153 NW 824 (1915). But I shall proceed on the assumption that MCL 500.3157 is being applied retroactively in relation to motor-vehicle accidents that occurred before June 11, 2019. I conclude that the Legislature clearly manifested an intent that MCL 500.3157 be applied to accidental bodily injuries sustained before the no-fault amendments took effect.

MCL 500.2111f(8), as amended by 2019 PA 22, provides:

> An insurer shall pass on, in filings to which this section applies, savings realized from the application of *section 3157(2) to (12)* to treatment, products, services, accommodations, or training rendered to individuals who suffered accidental bodily injury from *motor vehicle accidents that occurred before July 2, 2021*. An insurer shall provide the director with all documents and information requested by the director that the director determines are necessary to allow the director to evaluate the insurer's compliance with this subsection. After July 1, 2022, the director shall review all rate filings to which this section applies for compliance with this subsection. [Emphasis added.]

Under 2019 PA 21, the Legislature had initially enacted the following version of MCL 500.2111f(8):

> An insurer shall pass on, in filings to which this section applies, savings realized from the application of section 3157(2) to (12) to treatment, products, services, accommodations, or training rendered to individuals who suffered

accidental bodily injury from motor vehicle accidents *that occurred before the effective date of the amendatory act* that added this section. [Emphasis added.[4]]

When MCL 500.2111f(8) is read in conjunction with MCL 500.3157, it becomes abundantly clear that the Legislature envisioned and intended that MCL 500.3157 be applied to accidents and injuries arising before June 11, 2019. MCL 500.2111f(8) expressly references and effectively incorporates MCL 500.3157. And both statutes were encompassed by the 2019 legislative amendments of the no-fault act. MCL 500.2111f(8) mandates insurers to pass on savings realized from the application of MCL 500.3157(2) to (12) to the motor-vehicle accidents at issue in this litigation. Even if no savings are realized, it does not change the fact that Legislature indicated its intention that MCL 500.3157 be applied to accidents occurring before June 11, 2019. Indeed, the majority's ruling essentially circumvents and renders meaningless, to a great extent, the dictates of MCL 500.2111f(8). The majority reasons:

> [T]his rate-setting provision does not mandate that the limits on benefits provided in MCL 500.3157 shall be applied to persons injured before its effective date. And the claim that it does so by implication is very weak. The statute merely provides that if there are such savings, they must be used to reduce future rates. Whether such savings will occur is not defined by this statute.

I find this logic in rejecting the plain and unambiguous language of MCL 500.2111f(8) to be "very weak." In fact, the reasoning escapes me. To the extent that we are truly dealing with retroactive application, MCL 500.2111f(8) clearly, directly, and unequivocally demonstrates legislative intent to reach accidents and injuries occurring before June 11, 2019. See *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 155-156; 725 NW2d 56 (2006). The majority indicates that if there are "such savings" by an insurer under MCL 500.2111f(8), the insurer must reduce future rates. This argument appears to suggest or accept that insurers can indeed reap savings by making PIP payments consistent with MCL 500.3157 in relation to accidents occurring before July 2, 2021, which necessarily includes dates before June 11, 2019. And the majority's concern regarding "[w]hether such savings will occur" entirely misses the point that under MCL 500.2111f(8) the Legislature was effectively directing no-fault insurers to apply the fee schedules and limitations in MCL 500.3157 to existing PIP cases in order to realize savings. Finally, the majority dismisses MCL 500.2111f(8) because it is in a different chapter of the Insurance Code of 1956, MCL 500.100 *et seq.*, then MCL 500.3157. This contention ignores the fact that MCL 500.2111f(8) incorporates MCL 500.3157 by direct reference and that the statutes were both part of the overhaul of the no-fault act under 2019 PA 21 and 2019 PA 22.

In sum, I would hold that when MCL 500.2111f(8) is read in conjunction with MCL 500.3157, it becomes amply clear that the Legislature intended that MCL 500.3157 be applied to accidents and injuries arising before June 11, 2019.

---

[4] It is clear that the change made to MCL 500.2111f(8) in 2019 PA 22 was to capture realized savings in regard to accidental bodily injuries occurring not only before June 11, 2019, but also those arising before July 2, 2021.

## V. CONTRACTS CLAUSE

"No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." Const 1963, art 1, § 10. As a starting point, I note that statutes are presumed to be constitutional, and we are obligated to interpret a statute as constitutional unless its unconstitutionality is clearly apparent. *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 307; 806 NW2d 683 (2011). The Contracts Clause is intended to protect bargains by prohibiting the enactment of laws that interfere with preexisting contractual arrangements. *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership (On Remand)*, 300 Mich App 361, 371-372; 835 NW2d 593 (2013). But the Contracts Clause does not prevent the state from exercising its police power to impair a private contract when doing so is reasonably related to remedying an economic or a social need of the community. *Id.* at 372. The courts have adopted a balancing approach that weighs the degree or extent of the impairment of contractual obligations and rights against the state's justification for the impairment under the state's police power to implement laws for a legitimate public purpose. *Id.*

We employ a three-pronged test or inquiry to determine whether there has been a violation of the Contracts Clause, with the first prong focusing on whether there was a substantial impairment of a contractual relationship. *Aquirre v Michigan*, 315 Mich App 706, 715; 891 NW2d 516 (2016). This first prong itself entails consideration of three factors: (1) whether a contractual relationship existed; (2) whether the statutory provision impaired that contractual relationship; and (3) whether the impairment was substantial. *Id.* at 716. If a substantial impairment of a contractual relationship is established, the second prong requires examination whether legislative disruption of the contractual relationship was necessary for the public good, i.e., was the state law based on a significant and legitimate public purpose. *Id.*; *Wells Fargo Bank*, 300 Mich App at 373; *Health Care Ass'n Workers Compensation Fund v Dir of the Bureau of Worker's Compensation*, 265 Mich App 236, 241; 694 NW2d 761 (2005). The third prong involves an assessment whether the means chosen by the Legislature to address and accomplish the public good or purpose was reasonable. *Aquirre*, 315 Mich App at 716; *Health Care Ass'n*, 265 Mich App at 241. As is customary when reviewing economic and social regulations, we properly defer to the judgment of the Legislature with respect to the necessity and reasonableness of a particular statute except when the state is one of the parties to the contract. *Romein v Gen Motors Corp*, 436 Mich 515, 536; 462 NW2d 555 (1990); *Wells Fargo Bank*, 300 Mich App at 373-374.

USAA and Citizens first argue that there were no contracts between the parties, considering that plaintiffs Ellen Andary and Philip Krueger were not named insureds under the insurance policies at issue and that plaintiff Eisenhower Center had no contractual relationship whatsoever with Citizens. The majority simply ignores this argument and moves directly to the issue whether the no-fault amendments substantially impaired the obligations under the contracts of insurance. For purposes of my analysis, I will assume that the required contractual relationships existed. USAA and Citizens next maintain that the rights to a certain level of PIP benefits are not contractual rights but are instead statutory in nature, thereby being incompatible with an argument under the Contracts Clause. The majority addresses this issue as part of its retroactive analysis.

There can be no real dispute that liability for PIP benefits arose in the two particular instances covered by this litigation because contracts existed in the form of insurance policies. For example, had Ellen Andary not been covered by the USAA contract of insurance, USAA would

certainly not be liable for PIP benefits associated with her care and treatment. But even though there may be a contractual obligation to pay PIP benefits in a general sense because of a specific insurance policy, an insurer's obligation regarding the minimal *extent* of the PIP coverage is ultimately dictated by the no-fault act, not the contract. And this suit concerns limitations placed on the *extent* of PIP coverage under MCL 500.3157. As this Court has observed, "PIP benefits are mandated by the no-fault act, and a claimant's entitlement to PIP benefits is therefore based in statute, *not in contract*." *Bronson Health Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 342-343; 948 NW2d 115 (2019) (emphasis added). The no-fault act is the rule-book with respect to making decisions on issues involving an award of PIP benefits. *Id.* at 343. In *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 530; 502 NW2d 310 (1993), our Supreme Court explained that "[w]here insurance policy coverage is directed by the no-fault act and the language in the policy is intended to be consistent with that act, the language should be interpreted in a consistent fashion, which can only be accomplished by interpreting the statute, rather than individual policies." The Michigan Supreme Court has also stated that "benefits and liabilities [that] are statutory in origin . . . may be revoked or modified at the will of the Legislature." *Romein*, 436 Mich at 532. These principles drawn from the caselaw plainly undermine plaintiffs' argument regarding the alleged Contracts Clause violation. Nevertheless, I will continue my analysis because I believe that there is a more serious flaw in the plaintiffs' position and in the majority's ruling, and I shall accept for the sake of argument that the no-fault amendments substantially impaired plaintiffs' contractual rights.

Contrary to the majority's conclusion and in deference to the Legislature, I would hold as a matter of law that the amendment of MCL 500.3157, as applied to motor-vehicle accidents occurring before June 11, 2019, was reasonably related to a significant and legitimate public purpose linked to promoting the public good. As noted earlier, it is customary when reviewing economic and social legislation as part of a Contracts-Clause analysis that we defer to the judgment of the Legislature with respect to the necessity and reasonableness of the legislation unless the state is one of the parties to the contract. *Romein*, 436 Mich at 536; *Wells Fargo Bank*, 300 Mich App at 373-374.[5] In support of this proposition, the Court in *Romein*, 436 Mich at 536, relied on a decision by the United States Supreme Court in *United States Trust Co v New Jersey*, 431 US 1, 22-23; 97 S Ct 1505; 52 L Ed 2d 92 (1977), wherein the Court stated:

> Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption. As is customary in reviewing economic and social regulation, however, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure. *East New York Savings Bank v Hahn*, 326 US 230; 66 S Ct 69; 90 L Ed 34 (1945). [Citation omitted.]

And in *East New York Savings Bank*, 326 US at 231, the United States Supreme Court addressed a Contracts-Clause argument with respect to legislation "whereby the right of

---

[5] In *Selk v Detroit-Plastic Prod*, 419 Mich 1, 14; 345 NW2d 184 (1984), our Supreme Court ruled that in the context of a claim under the Contracts Clause, a court cannot invalidate an act that is reasonably related to a permissible legislative objective.

foreclosure for default in the payment of principal was suspended for a year as to mortgages." The Court ruled:

> [W]hen a widely diffused public interest has become enmeshed in a network of multitudinous private arrangements, the authority of the State to safeguard the vital interests of its people is not to be gainsaid by abstracting one such arrangement from its public context and treating it as though it were an isolated private contract constitutionally immune from impairment.
>
> The formal mode of reasoning by means of which this protective power of the state is acknowledged is of little moment. It may be treated as an implied condition of every contract and, as such, as much part of the contract as though it were written into it, whereby the State's exercise of its power enforces, and does not impair, a contract. A more candid statement is to recognize . . . that the power which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the government to protect the general welfare of the people, and is paramount to any rights under contracts between individuals. Once we are in this domain of the reserve power of a State we must respect the wide discretion on the part of the legislature in determining what is and what is not necessary. So far as the constitutional issue is concerned, the power of the State when otherwise justified, is not diminished because a private contract may be affected. [*Id.* at 232-233 (quotation marks, citations, and ellipses omitted).]

In this case, in the title of 2019 PA 21 and 2019 PA 22, the Legislature stated that part of the purpose of the legislation was "to provide for the continued availability and affordability of automobile insurance . . . in this state and to facilitate the purchase of that insurance by all residents of this state at fair and reasonable rates[.]" The means used by the Legislature in an effort to accomplish this purpose included amending MCL 500.3157, alleviating the financial burden on insurance companies to cover claims by limiting or reducing the payment of PIP benefits for treatment and training with respect to all persons injured in the past and those who will be injured in the future. But while at the same time requiring insurance companies to pass cost savings on to insureds. On its face, and absent the need for factual exploration through discovery, the purpose articulated by the Legislature for the sweeping no-fault amendments, which constituted economic legislation, was significant, reasonable, and legitimate, serving the public good. This is especially true in light of the deference that must be given to the Legislature in such matters.

In the context of constitutional challenges to legislation, rational-basis review, which triggers the axiomatic rule of a presumption of constitutionality, dictates "that where the legislative judgment is supported by any state of facts either known or which could reasonably be assumed, although such facts may be debatable, the legislative judgment must be accepted." *Shavers v Kelley*, 402 Mich 554, 613-614; 267 NW2d 72 (1978) (quotation marks and citation omitted). The *Shavers* Court added:

> In accord with this axiomatic rule and its corollary a court may uphold the constitutionality of police power legislative judgments in the face of [a constitutional] . . . challenge by taking judicial notice of indisputable, generally known or easily ascertainable facts. And, because the "presumption of

constitutionality" is a rebuttable presumption, a party challenging the legislative judgment may attack its constitutionality in terms of purely legal arguments (if the legislative judgment is so arbitrary and irrational as to render the legislation unconstitutional on its face) or may show, by bringing to the court's attention facts which the court can judicially notice, that the legislative judgment is without rational basis. [*Id.* at 614-615.]

I find nothing arbitrary or irrational about the Michigan Legislature taking steps to make no-fault insurance, which is mandatory for owners or registrants of motor vehicles, MCL 500.3101(1), as affordable as possible for as many Michiganders as possible, especially where it is generally known that Michigan drivers had paid the highest auto insurance rates in the country. Being able to drive an automobile is vital to the livelihood of many individuals, and if no-fault insurance is unaffordable, persons must forego driving, and unfortunately some choose to unlawfully drive without the required insurance.

On the issue regarding whether the means chosen by the Legislature to accomplish its goal or purpose was reasonable, I conclude as a matter of law that imposing fee schedules and other limitations on PIP coverage in relation to accidental bodily injuries occurring before June 11, 2019, was reasonable. It is generally known that insured Michiganders received from their insurers $400 refund checks per vehicle and that insurance premiums declined as a consequence of the economic legislation. Indeed, the majority itself acknowledges that "there are more than 17,000 victims of pre-amendment auto accidents whose benefits would be cut." The resulting financial savings enjoyed by insurers and the concomitant reduction in the financial burden on insureds are indisputable. And at the risk of sounding like a broken record, this Court must defer to the legislative judgment on the matter. I note and embrace the words of the United States Supreme Court in *East New York Savings Bank*, 326 US at 234:

Appellant asks us to reject the judgment of the joint legislative committee, of the Governor, and of the Legislature, that the public welfare, in the circumstances of New York conditions, requires the suspension of mortgage foreclosures for another year. On the basis of expert opinion, documentary evidence, and economic arguments of which we are to take judicial notice, it urges such a change in economic and financial affairs in New York as to deprive of all justification the determination of New York's legislature of what New York's welfare requires. We are invited to assess not only the range and incidence of what are claimed to be determining economic conditions in sofar as they affect the mortgage market— bank deposits and war savings bonds; increased payrolls and store sales; available mortgage money and rise in real estate values—but also to resolve controversy as to the causes and continuity of such improvements, namely the effect of the war and of its termination, and similar matters. *Merely to enumerate the elements that have to be considered shows that the place for determining their weight and their significance is the legislature not the judiciary.* [Emphasis added.]

## VI. CONCLUSION

I conclude that the legislative changes made to MCL 500.3157 apply to automobile accidents that occurred before June 11, 2019. I also find that the claim alleging a violation of the

Contracts Clause is not sustainable. I further conclude that the due process and equal protection claims fail as a matter of law, assuming standing, but for purposes of this dissent, it is unnecessary to set forth my reasoning. Accordingly, I would affirm the trial court's ruling granting summary disposition in favor of defendants. I note that I am not unsympathetic to plaintiffs' plight, but in this case the Legislature's action must be honored without interference by the judiciary. I respectfully dissent.


/s/ Jane E. Markey