HEALTH CARE ASSOCIATION WORKERS COMPENSATION
FUND v DIRECTOR OF THE BUREAU OF WORKER'S
COMPENSATION, DEPARTMENT OF CONSUMER
AND INDUSTRY SERVICES

Docket No. 246050. Submitted November 10, 2004, at Lansing. Decided
February 15, 2005, at 9:05 a.m.

The Health Care Association Workers Compensation Fund, a worker's compensation self-insurer group, sought declaratory and injunctive relief in the Ingham Circuit Court to prohibit the director of the Bureau of Worker's Compensation in the former Department of Consumer and Industry Services (now the Worker's Compensation Agency in the Department of Labor and Economic Growth) from enforcing language added to MCL 500.2016 by 1998 PA 457 that the plaintiff contended was unconstitutional. The added language precluded worker's compensation self-insurer groups from conditioning the payment of a dividend to an employer member on continued participation in the group. The court, James R. Giddings, J., denied the plaintiff's motion for summary disposition and entered judgment in favor of the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. The added language does not violate the Contract Clause of the Michigan Constitution, Const 1963, art 1, § 10, or the United States Constitution, US Const, art I, § 10, because there is a significant and legitimate public purpose for the impairment of contracts that so condition payment of dividends and the means adopted to implement the legislation are reasonably related to the public purpose of bringing an immediate end to an unduly anticompetitive practice.

2. Application of the added language to contracts of such self-insurer groups entered into before the effective date of 1998 PA 457 constitutes retroactive application of the legislation, even if the contracts are related to conduct that occurred after the effective date. Conduct related to contracts entered into before the effective date must be excepted from application of the amendments of the statute.

3. There is no constitutional provision prohibiting the Legislature from regulating worker's compensation self-insurer groups

under the Insurance Code rather than the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*. The defendant has the authority under the plain language of MCL 500.2016 to regulate groups such as the plaintiff to the extent the statute regulates certain unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. Moreover, the Governor had authority to transfer the regulation of worker's compensation self-insurer groups under the statute from the Insurance Commissioner to the defendant.

4. Enactment of the language added to MCL 500.2016 did not violate the Title-Object Clause, Const 1963, art 4, § 24, because regulating the practices of worker's compensation self-insurer groups that pool risks is not a diverse subject from regulating insurance companies that provide worker's compensation coverage; rather, it was merely a means of attaining the primary object of regulating the provision of insurance coverage.

5. The language added to MCL 500.2016 did not amend the WDCA by implication in violation of Const 1963, art 4, § 25.

Affirmed in part, reversed in part, and remanded for entry of an order consistent with the Court of Appeals opinion.

1. WORKER'S COMPENSATION — SELF-INSURER GROUPS — DIVIDENDS — IMPAIRMENT OF CONTRACTS.

The amendment of MCL 500.2016 that added language prohibiting worker's compensation self-insurer groups from conditioning the payment of a dividend on continued participation in the group does not impair contracts in a manner that violates the federal and state constitutions; the prohibition does not apply to contracts between groups and member employers entered into before the effective date of the amendment (US Const, art I, § 10; Const 1963, art 1, § 10).

2. WORKER'S COMPENSATION — SELF-INSURER GROUPS — REGULATION — INSURANCE CODE.

The inclusion of provisions in the Insurance Code that regulate worker's compensation self-insurer groups did not violate the Title-Object Clause because regulating the practices of worker's compensation self-insurance groups is a substantially similar subject to regulating insurance companies that provide worker's compensation coverage and was merely a means of attaining the primary object of regulating the provision of insurance coverage (Const 1963, art 4, § 24; MCL 500.2016).

*Foster, Swift, Collins & Smith, P.C.* (by *Stephen O. Schultz*), for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Morrison Zack*, Assistant Attorney General, for the defendant.

Before: DONOFRIO, P.J., and MARKEY and FORT HOOD, JJ.

DONOFRIO, P.J. Plaintiff Health Care Association Workers Compensation Fund, a worker's compensation self-insurer group, brought this suit to challenge the constitutionality of a portion of MCL 500.2016.[1] Specifically, plaintiff challenges the constitutionality of the addition of language to MCL 500.2016(1)(a) and (3) precluding a worker's compensation self-insurer group from conditioning the payment of a dividend, i.e., a payout of money from surplus funds to an employer member, on continued participation in the group. The circuit court denied plaintiff's motion for summary disposition and entered judgment in favor of defendant. Plaintiff appeals as of right, and, although we do not conclude that the statute at issue is unconstitutional on its face or as applied, we do conclude that defendant's interpretation of the statute constitutes retroactive application. We affirm in part, reverse in part, and remand.

### SUBSTANTIVE FACTS AND PROCEDURE

Plaintiff is a self-insurer group that contracts annually with member employers to fund worker's compensation liability. Plaintiff sought in the circuit court to prohibit defendant, the director of the Bureau of Work-

---

[1] As amended by 1998 PA 457, with immediate effect on January 4, 1999.

er's Compensation in the former Department of Consumer and Industry Services (now the Worker's Compensation Agency in the Department of Labor and Economic Growth), from enforcing the additional provisions in MCL 500.2016(1)(a) and (3). Particularly, in its complaint, plaintiff sought declarative and injunctive relief with regard to its contention that the language in MCL 500.2016 precluding it from withholding dividends, i.e., refunds of surplus funds, from an employer who decided to discontinue participation with plaintiff was unconstitutional, either in its entirety or as applied to contracts that preexisted the enactment of the pertinent statutory language. After entertaining oral argument, the circuit court issued an opinion rejecting plaintiff's challenges to the constitutionality of MCL 500.2016.

Now, on appeal, three of the four issues presented by plaintiff constitute facial challenges to the constitutionality of the relevant provisions of MCL 500.2016, while plaintiff's remaining issue more narrowly challenges the constitutionality of the application of those provisions to contracts that were entered into before January 4, 1999, the effective date of 1998 PA 457. We will reach each of the issues in turn.

### STANDARD OF REVIEW

The resolution of a summary disposition motion is reviewed de novo. *Corley v Detroit Bd of Ed,* 470 Mich 274, 277; 681 NW2d 342 (2004). Likewise, we review the constitutionality of a statute de novo. *DeRose v DeRose,* 469 Mich 320, 326; 666 NW2d 636 (2003).

### I

First, plaintiff argues that the circuit court erred when it denied plaintiff's request for a declaratory

judgment that the amendments to MCL 500.2016 create a new obligation in violation of article 1, § 10 of the Michigan Constitution of 1963.

MCL 500.2016 provides, in relevant part:

> (1) In addition to other provisions of law, the following practices as applied to worker's compensation insurance including worker's compensation coverage provided through a self-insurer's group are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
>
> (a) As a condition of receiving a dividend for the current or a previous year, requiring an insured to renew or maintain worker's compensation insurance with the insurer beyond the current policy's expiration date or requiring a member to continue participation with a worker's compensation self-insurer group.

* * *

> (3) This section also applies to worker's compensation self-insurers' groups.

Const 1963, art 1, § 10, the Contract Clause of the Michigan Constitution, provides that no law "impairing the obligation of contract shall be enacted." The federal Contract Clause, US Const, art I, § 10, similarly provides that no state shall "pass any . . . Law impairing the Obligation of Contracts . . . ."

The purpose of the Contract Clause "is to protect bargains reached by parties by prohibiting states from enacting laws that interfere with preexisting contractual arrangements." *Studier v Michigan Pub School Employees' Retirement Bd,* 260 Mich App 460, 474; 679 NW2d 88 (2004), lv gtd 471 Mich 875 (2004). However, the Contract Clause prohibition on state laws impairing the obligations of contract is not absolute. *Id.* Rather, the "prohibition must be 'accommodated to the inherent police power of the State "to safeguard the vital

interests of its people." ' " *Id.,* quoting *Energy Reserves Group, Inc v Kansas Power & Light Co,* 459 US 400, 410; 103 S Ct 697; 74 L Ed 2d 569 (1983), quoting *Home Bldg & Loan Ass'n v Blaisdell,* 290 US 398, 434; 54 S Ct 231; 78 L Ed 413 (1934).

A three-pronged test is used to analyze Contract Clause issues. The first prong considers whether the state law has operated as a substantial impairment of a contractual relationship. The second prong requires that legislative disruption of contractual expectancies be necessary to the public good. The third prong requires that the means chosen by the Legislature to address the public need be reasonable. *In re Certified Question (Fun 'N Sun RV, Inc v Michigan),* 447 Mich 765, 777; 527 NW2d 468 (1994); *Studier, supra* at 474-475. In other words, if the impairment of a contract is only minimal, there is no unconstitutional impairment of contract. However, if the legislative impairment of a contract is severe, then to be upheld it must be affirmatively shown that (1) there is a significant and legitimate public purpose for the regulation and (2) that the means adopted to implement the legislation are reasonably related to the public purpose. *Wayne Co Bd of Comm'rs v Wayne Co Airport Auth,* 253 Mich App 144, 163-164; 658 NW2d 804 (2002), citing *Blue Cross & Blue Shield of Michigan v Governor,* 422 Mich 1, 23; 367 NW2d 1 (1985).

Obviously, application of MCL 500.2016 to contracts entered into by plaintiff before the effective date of the amendments could impair some contracts that plaintiff had entered into because it precludes plaintiff from enforcing contractual provisions that would allow it to withhold dividends from a former member who has ceased participation with plaintiff. But we conclude it unnecessary to ultimately determine whether the im-

pairment of contract caused by the pertinent language in MCL 500.2016 constitutes a substantial impairment. As we mentioned earlier, even a statute that substantially impairs a contractual provision does not violate the Contract Clause if there is a significant and legitimate public purpose for the regulation and the means adopted to implement the legislation are reasonably related to the public purpose. *Wayne Co Bd of Comm'rs, supra* at 164. Importantly, in the context of resolving a Contract Clause issue, our Supreme Court has noted the principle that " '[a]s is customary in reviewing economic and social regulation . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.' " *Romein v Gen Motors Corp,* 436 Mich 515, 536; 462 NW2d 555 (1990), quoting *United States Trust Co v New Jersey,* 431 US 1, 22-23; 97 S Ct 1505; 52 L Ed 2d 92 (1977).

The pertinent language of MCL 500.2016 serves the purpose of fostering competition in the market for worker's compensation coverage by precluding a self-insurer group from conditioning receipt of a dividend, i.e., a refund of surplus funds, on continued participation with the group. While this might not benefit worker's compensation recipients directly, lower costs to employers and competition generally benefit employers throughout the economy and thereby indirectly aid the state economy in the aggregate. Indeed, it seems that the Legislature could reasonably view eliminating unduly anticompetitive practices as serving the public interest. See, e.g., *Bristol Window & Door, Inc v Hoogenstyn,* 250 Mich App 478, 486-487; 650 NW2d 670 (2002) (discussing existence of common-law rule against enforcing agreements for unreasonable restraint of trade even "before any statutory scheme of business regulation existed in Michigan").

Further, requiring a member of a self-insurer group to forfeit its proportionate share of surplus funds in distribution of dividends as a consequence of leaving the self-insurer group could also reasonably be viewed as an unduly anticompetitive act if a group has no legitimate business interest worthy of protection. Effectively abrogating contractual provisions allowing such a withholding of dividends from employers who cease participation in the group could likewise be viewed by the Legislature as reasonably necessary to bring an immediate end to an unduly anticompetitive practice.

We conclude that the pertinent language of MCL 500.2016 does not violate the federal or Michigan Contract Clause as applied because, granting appropriate deference to legislative judgment, there is a significant and legitimate public purpose for such an impairment of contract and the means adopted to implement the legislation are reasonably related to the public purpose.

Within this issue, plaintiff also makes an argument to the effect that the Legislature may not have intended the relevant amendments made by 1998 PA 457 to MCL 500.2016 to apply to contracts entered into before the effective date of that act. This argument is completely outside the scope of the relevant statement of the question presented, which presents only a Contract Clause issue. Because of the improper presentation, we could decline to consider this question. MCR 7.212(C)(5); *McGoldrick v Holiday Amusements, Inc*, 242 Mich App 286, 298; 618 NW2d 98 (2000). Despite the error in presentation, we will consider the merits of the issue because we have all the facts and law before us, and it is a significant issue.

The interpretation and application of a statute is a question of law that this Court reviews de novo. *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 157; 627

NW2d 247 (2001). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). It is presumed that the Legislature intended the plain and obvious meaning it expressed. *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). If the terms of a statute are ambiguous, judicial construction is appropriate. *Murphy, supra* at 158. The Court must apply a reasonable construction that considers the purpose of the statute and the harm it is designed to remedy. *Id.* The Court must give effect to every word, clause, and sentence, presuming that each is used for a purpose. *Pohutski, supra* at 683-684. Likewise, the Court should avoid a statutory construction that renders any portion of the statute surplusage or nugatory. *Id.* at 684. The provisions of a statute must be read within the context of the entire statute so as to produce a harmonious and consistent enactment. *Murphy, supra* at 159-160.

During the course of oral argument, the parties agreed that participants in the plan that had both paid into the plan and left the plan before adoption of the amendments (i.e., their contracts expired before the effective date of the amendments) are not encompassed in the class of participants affected by the statute. As such, those participants are not entitled to reimbursement because the statute is inapplicable. Additionally, the parties agreed that the statute does apply to those participants who entered into contracts after the effective date of the amendments. Thus, those participants are entitled to reimbursement because the statute is applicable. The parties only disagree regarding those participants that had active annual contracts both before and after the effective date of the amendments.

Each of the parties argues that the statutory language is clear and supports its individual interpretation of the statute.

Defendant interprets the statute to allow the Bureau of Worker's Compensation to apply the statute to contract years before the adoption of the amendments, specifically pointing to the language "current or a previous year" in MCL 500.2016(1)(a). Plaintiff refers to the same language, but argues that the language means that the statute can only be applied to current or previous contract years commencing *after* adoption of the amendments. After scrutinizing the plain language of the statute, and carefully considering the interpretations offered by the parties, we agree with the latter interpretation.

Contrary to defendant's assertions, this case does involve the retroactive application of legislation. While defendant asserts that the Bureau of Worker's Compensation is properly applying the relevant provisions of MCL 500.2016 with regard to the obligations of worker's compensation self-insurer groups as of the effective date of 1998 PA 457, i.e., January 4, 1999, the bureau is actually applying these requirements to contracts entered into *before* that date. Under these facts, it is self-evident that applying a statute to contracts entered into before the effective date of the provision constitutes "retroactive" application of the statute, even if the contracts are related to conduct that occurred after the effective date of the amendments of MCL 500.2016. For that reason, we conclude that the proper application of MCL 500.2016 requires that conduct related to contracts that were entered into before the effective date of the pertinent provisions of MCL 500.2016 be excepted from the application of the statute.

II

Plaintiff next argues that the circuit court erred when it denied plaintiff's request to enjoin defendant from enforcing the amendments of MCL 500.2016. We find portions of plaintiff's argument regarding this issue somewhat convoluted. However, plaintiff appears to argue that the language of MCL 500.2016 applicable to worker's compensation self-insurer groups is somehow invalid or unconstitutional because the Legislature can only regulate such self-insurer groups in the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, or because the remainder of the Insurance Code is only concerned with the activities of insurance companies. We have found no plausible reason to conclude that any part of MCL 500.2016 is invalid on either basis.

While MCL 500.2016 is part of the Insurance Code, plaintiff has not presented, and we have not discovered, any constitutional provision that could reasonably be interpreted as either precluding the Legislature from adopting regulations applicable to worker's compensation self-insurer groups or that requires the Legislature to only regulate such self-insurer groups in the WDCA. Rather, the Legislature has general plenary power to enact legislation subject only to prohibitions of federal law or the Michigan Constitution. *People v Cooper,* 236 Mich App 643, 663-664; 601 NW2d 409 (1999) ("an enacted statute in force regarding *any* subject or establishing *any* type of rule is valid as long as it does not contravene a provision of the Michigan Constitution or federal law"). Thus, contrary to plaintiff's implication, there is no flat prohibition against the Legislature including a provision in the Insurance Code that is applicable to worker's compensation self-insurer groups.

Plaintiff also indicates that MCL 500.2016 is inconsistent with other statutory provisions, particularly other provisions within the Insurance Code. Even if that assertion were accurate, and to whatever extent it is accurate, this would not render MCL 500.2016 invalid or unconstitutional. Rather, it might require the use of certain statutory construction tools or application of principles for interpreting ambiguous statutes. See *Jones v Enertel, Inc,* 467 Mich 266, 270-271; 650 NW2d 334 (2002) (specific statutory language prevails over inconsistent general language), and *Mayor of Lansing v Pub Service Comm,* 470 Mich 154, 166; 680 NW2d 840 (2004) (a statutory provision is ambiguous if it irreconcilably conflicts with another provision).

Plaintiff also contends that defendant does not have authority to enforce provisions of MCL 500.2016 against worker's compensation self-insurer groups such as plaintiff. Plaintiff begins by asserting that the enforcement of Insurance Code provisions is entrusted to the Insurance Commissioner, but the Insurance Commissioner does not have authority to regulate a worker's compensation self-insurer group because the Insurance Commissioner only has authority to regulate parties engaged in the business of insurance. In particular, plaintiff points to MCL 500.2028, which provides the Insurance Commissioner the power—upon probable cause—"to examine and investigate into the affairs of a person *engaged in the business of insurance* in this state to determine whether the person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by [MCL 500.2001 to MCL 500.2050]." (Emphasis added.) On the basis of its assertion that it is not engaged in the business of insurance, plaintiff argues that neither the Insurance Commissioner nor defendant has authority to enforce the provisions of MCL 500.2016.

It is true, from our reading of the Insurance Code, that there is no provision that expressly states that the Insurance Commissioner has authority to regulate worker's compensation self-insurer groups. Also, it seems essentially undisputed that such self-insurer groups have not historically been considered to be engaged in the business of insurance so as to be normally subject to regulation by the Insurance Commissioner. Nevertheless, when 1998 PA 457 went into effect on January 4, 1999, it added the pertinent language to MCL 500.2016(1)(a) that defines it as an unfair method of competition and unfair and deceptive act or practice "in the business of insurance" for a worker's compensation self-insurer group to condition a member's receipt of a dividend for the current or a previous year on continued participation with the self-insurer group.

By the plain language of MCL 500.2016, a worker's compensation self-insurer group such as plaintiff employs an unfair method of competition and engages in an unfair or deceptive act or practice "in the business of insurance" if it commits the proscribed act of withholding payment of a dividend on the basis of an employer's discontinuance of participation with the self-insurer group. Accordingly, even if a worker's compensation self-insurer group is not considered to be engaged in the business of insurance for any other purpose, by the express language of MCL 500.2016 it is engaged in a proscribed practice in the business of insurance if it engages in the conduct it is prohibited from committing by MCL 500.2016(1)(a).

As we stated earlier, MCL 500.2028 grants the Insurance Commissioner power, with probable cause, to examine and investigate the affairs of a person engaged in the business of insurance to determine if the person

has engaged in an unfair method of competition or unfair or deceptive act or practice prohibited by MCL 500.2016. A "[p]erson" is defined for purposes of the Insurance Code to include "any other legal entity." MCL 500.114. Clearly, (1) plaintiff is a legal entity, and (2) by the applicable statutory language it would be engaged in the business of insurance if it violated MCL 500.2016(1)(a). For these reasons, we conclude that, when 1998 PA 457 amended MCL 500.2016, plaintiff and any other worker's compensation self-insurer group that violated MCL 500.2016(1)(a) would be subject to regulation by the Insurance Commissioner. *Martin v Beldean,* 469 Mich 541, 546; 677 NW2d 312 (2004) (clear and unambiguous statutory language should be enforced as written.)

However, on August 25, 1999, when Executive Order No. 1999-5[2] went into effect, Governor John Engler transferred the relevant authority of the Insurance Commissioner over worker's compensation self-insurer groups to the Bureau of Worker's Compensation. The pertinent portion of Executive Order No. 1999-5 reads as follows:

> All the authority, powers, duties, functions, grants and responsibilities of the Insurance Bureau to determine unfair methods of competition and unfair and deceptive acts or practices as applied to workers' compensation coverage provided through a self-insurer's group, provided for in [1998 PA 457], being [MCL 500.2016], are hereby transferred to the Bureau of Workers' Disability Compensation.

Plaintiff argues in cursory fashion that the Governor could not amend the law by executive order to transfer enforcement power from one department to another

---

[2] This executive order represents the promulgation of Executive Reorganization Order No. 1999-3 and is codified at MCL 418.3.

department. This argument is erroneous. Under Const 1963, art 5, § 2, the Governor has the authority to transfer power " 'within, among or across' " executive departments. *Straus v Governor,* 459 Mich 526, 534; 592 NW2d 53 (1999). Such an action by the Governor " 'has the status of enacted legislation' " and a presumption of constitutionality.[3] *Id.* Accordingly, contrary to plaintiff's argument, Governor Engler had the power by executive order to effectively amend MCL 500.2016 by transferring the power to enforce its provisions with regard to worker's compensation self-insurer groups from the Insurance Commissioner to the Bureau of Worker's Compensation.

III

Plaintiff argues that the circuit court erred in denying plaintiff's request for a declaratory judgment because the enactment of the portion of 1998 PA 457 amending MCL 500.2016 violated the Title-Object Clause of the Michigan Constitution, Const 1963, art 4, § 24, because it embraces two objects within the title of the Insurance Code: (1) the business of insurance and (2) worker's compensation self-insurers. Const 1963, art 4, § 24 provides:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.

The Title-Object Clause states that a law may not embrace more than one object. *Pohutski, supra* at 691.

---

[3] Such an executive order is subject to being blocked by a legislative veto mechanism, *Straus, supra* at 534, but Executive Order No. 1999-5 was not blocked by legislative veto.

The object of a law is its general purpose or aim. The " 'one object' " provision is to be "construed reasonably, not in so narrow or technical a manner that the legislative intent is frustrated." *Id.* Also, our Supreme Court has stated in the context of a Title-Object Clause issue that " 'all possible presumptions should be afforded to find constitutionality.' " *Id.* at 690, quoting *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 464; 208 NW2d 469 (1973). Legislation does not violate the Title-Object Clause merely because "it contains more than one means of attaining its primary object . . . ." *Pohutski, supra* at 691. However, if an act " 'contains "subjects diverse in their nature, and having no necessary connection," ' it violates the Title-Object Clause." *Id.,* quoting *City of Livonia v Dep't of Social Services,* 423 Mich 466, 499; 378 NW2d 402 (1985) (citations omitted).

Plaintiff's argument depends on characterizing the regulation of worker's compensation self-insurer groups as an object distinct from the regulation of insurance and surety businesses. We reject this argument because it is reasonable to regard both types of regulations as part of an overall object of regulating the provision of insurance coverage. Although worker's compensation self-insurer groups generally may not be considered to be in the business of insurance for the purposes of regulation by the Insurance Commissioner, like insurance companies their basic function is to pool risks by receiving premiums under agreements in return for agreeing to cover certain types of occurrences. Thus, it is reasonable to regard those self-insurer groups as providing insurance coverage although they are not for-profit insurance companies.

We conclude that the inclusion in 1998 PA 457 of the pertinent language in MCL 500.2016 regulating work-

er's compensation self-insurer groups did not violate the Title-Object Clause. It was merely a means of attaining the primary object of regulating the provision of insurance coverage. Regulating practices of a worker's compensation self-insurer group is not a diverse subject from regulating insurance companies that provide worker's compensation coverage. Instead, it is reasonably viewed as a substantially similar subject. Plaintiff has not established that the enactment by 1998 PA 457 of the relevant language in MCL 500.2016 violated the Title-Object Clause.

IV

Finally, plaintiff argues that the circuit court erred in denying plaintiff's request for a declaratory judgment because the enactment of the part of 1998 PA 457 amending MCL 500.2016 was a constitutionally prohibited amendment of the WDCA by implication because it directly affects self-insurers regulated only by the Bureau of Worker's Compensation and not by the Insurance Commissioner.

Const 1963, art 4, § 25 provides: "No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length."

Plaintiff's argument depends on its contention that the language added to MCL 500.2016 by 1998 PA 457 "amended" MCL 418.611 by imposing a new regulation on worker's compensation self-insurer groups to be enforced by the Insurance Commissioner. However, plaintiff has cited nothing in MCL 418.611 providing that only the Bureau of Worker's Compensation may regulate such self-insurer groups concerning any matter. Likewise, plaintiff has not substantiated its claim that the regulations imposed or authorized by MCL

418.611 on such self-insurer groups are the only regulations to which they are subject. Accordingly, the imposition of a new regulation on such self-insurer groups in MCL 500.2016 does not amend MCL 418.611 by implication and plaintiff's argument fails.

CONCLUSION

Application of the pertinent language of MCL 500.2016 to conduct occurring after the effective date of its enactment, but related to contracts entered into before that date, does not violate the Contract Clauses of the federal or state constitution. However, when the statute is interpreted and applied as suggested by defendant, it does constitute a retroactive application of the statute. Plaintiff has not established that the Legislature lacked the power to regulate worker's compensation self-insurer groups in the Insurance Code or that defendant does not have the power to enforce MCL 500.2016 against such self-insurer groups. And plaintiff has not established that 1998 PA 457 violated the Title-Object Clause by enacting the relevant language of MCL 500.2016. Finally, 1998 PA 457 did not amend MCL 418.611 by implication.

Affirmed in part, reversed in part, and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.