*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE DEMSKE, Individually and as
Conservator for RD,

        Plaintiffs-Appellees,

and

SURGEONS CHOICE MEDICAL CENTER,

        Intervening Plaintiff,

v

MARTIN FICK and BEST ASPHALT, INC,

        Defendants,

and

STATE FARM AUTOMOBILE INSURANCE
COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
April 18, 2024
9:10 a.m.

No. 362739
Wayne Circuit Court
LC No. 20-011650-NI

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

-1-

Defendant, State Farm Mutual Automobile Insurance Company ("defendant"), appeals by leave granted[1] the order denying its motion for partial summary disposition in this action for personal protection insurance (PIP) benefits[2] under the no-fault act, MCL 500.3101 *et seq.*, brought by plaintiffs, Michelle Demske ("Michelle") and Michelle Demske, as guardian and conservator for protected individual RD ("RD").[3]  Specifically, defendant alleged that the trial court erred in failing to grant partial summary disposition of a claim for PIP benefits that exceeded the fee schedule provisions delineated in MCL 500.3157.  We reverse and remand.

## I.  FACTUAL AND PROCEDURAL HISTORY

On September 8, 2020, plaintiffs, Michelle and RD, filed a complaint against Martin Fick ("Fick"), Best Asphalt, Inc.,[4] and defendant.[5]  Particularly, it was asserted that, on October 25, 2019, Michelle was driving a 2018 Ford motor vehicle with RD as a passenger on eastbound Southfield Road at or near the intersection of Sixth Street in the city of Ecorse.  Fick allegedly drove a 1994 Peterbilt motor vehicle in a careless, reckless, and negligent manner on eastbound Southfield Road and struck plaintiffs' vehicle, causing them serious and permanent injuries.  It was further submitted that Fick drove his vehicle in a manner that violated the motor vehicle code as well as local city ordinances.  Plaintiffs claimed that Best Asphalt, Inc. was the owner of the Peterbilt operated by Fick, knowingly allowed its employee, Fick, to drive it in a negligent manner, and was liable under the owner's liability statute.  As a result of the automobile accident, plaintiffs raised three claims of negligence against Fick and Best Asphalt, Inc.

Plaintiffs also contended that they were insured by defendant prior to and on the date of the accident, and defendant was obligated to pay expenses or losses sustained in the accident arising out of the ownership, operation, maintenance, or use of a motor vehicle. Despite presenting reasonable proof of loss for payment of PIP benefits, plaintiffs alleged that defendant unreasonably refused to pay.  Because defendant withheld benefits, plaintiffs claimed entitlement to interest,

---

[1] *Demske v Fick*, unpublished order of the Court of Appeals, entered February 21, 2023 (Docket No. 362739).

[2] Personal protection insurance benefits are also known as "first party" or "PIP" benefits. *McKelvie v Auto Club Ins Ass'n*, 459 Mich 42, 44 n 1; 586 NW2d 395 (1998).

[3] Initially, plaintiffs, a married couple, were individually named and represented their respective interests.  RD suffered a health issue during his deposition that caused it to be adjourned.  When RD's deposition was not completed after multiple attempts, defendants moved to dismiss RD's claims under MCR 2.210(E).  On August 10, 2021, the trial court entered a stipulated order to amend the case caption to replace RD with Michelle as RD's conservator.

[4] On February 2, 2022, plaintiffs stipulated to dismiss defendants Best Asphalt, Inc. and Fick with prejudice, without costs or attorney fees.

[5] On June 3, 2022, Surgeons Choice Medical Center, the intervening plaintiff, stipulated to dismiss its claim against defendant, and it is not a party to this appeal.  The order provided that it was not a final order and did not dismiss the case.

costs, and reasonable attorney fees. Accordingly, in this count of the complaint, plaintiffs requested first-party benefits from defendant.

In May 2022, defendant moved for partial summary disposition under MCR 2.116(C)(10). Defendant alleged that plaintiffs requested PIP benefits for medical services rendered arising from the automobile accident that occurred on October 25, 2019. However, a no-fault fee schedule, MCL 500.3157, applied to treatment that was provided after July 1, 2021. More specifically, for services rendered after July 1, 2021, and before July 2, 2022, providers were entitled to reimbursement of more than 200% of the amount payable for certain types of treatment under Medicare. Defendant delineated various services for which plaintiffs sought reimbursement. Despite the fact that reimbursement was capped contingent on the service provided and the individual that performed the service, defendant noted that plaintiffs refused to accept the capped rates set forth in the fee schedule for services rendered to RD.

In its motion, defendant noted that, before the no-fault act was reformed, a service provider's charges were only limited by reasonableness. But on June 11, 2019, MCL 500.3157 was amended to implement a fee schedule. The new fee schedule replaced the reasonableness standard with a cap on the fees that medical providers may recover under the no-fault act. Defendant submitted a chart of fees charged by various service providers and the applicable cap when MCL 500.3157 was applied. Defendant requested that the trial court grant partial summary disposition in its favor and dismiss plaintiffs' claims for services[6] rendered to the extent the charge exceeded the no-fault fee schedule amount.[7]

In June 2022, plaintiffs filed their response. Plaintiffs asserted that they were stopped at a red light at the intersection of Southfield Road and Sixth Street when they were rear-ended by a semi-truck operated by Fick. In the October 25, 2019 crash, RD allegedly sustained significant injuries to his chest and back that required surgery and spinal injections. Plaintiffs purchased their policy on October 1, 2019. It provided for unlimited medical benefits. Despite the fact that the policy premiums were paid and the qualifying injury occurred before the July 1, 2021 fee schedule became effective, plaintiffs claimed that defendant inappropriately sought to dismiss claims that were in excess of the amount allowed under the fee schedule.

Plaintiffs asserted that the insurance policy and the no-fault act were read together and reviewed de novo. Applying this review, plaintiffs claimed their contractual rights became legally vested when the premium was paid and a qualifying injury was sustained that triggered payment

---

[6] Although the complaint identified both husband and wife, RD and Michelle Demske as plaintiffs, the partial motion for summary disposition applied only to RD's claim for services rendered after July 1, 2021. There was no indication or evidence that Michelle received medical services after July 1, 2021.

[7] With the motion, defendant submitted a copy of plaintiffs' complaint, a copy of the fee schedule and the applicable Medicare contractor for the pertinent geographical area, health insurance claim forms and invoices for services provided, and Medicare Fee Schedules delineating the limited charge covered.

of benefits under the purchased policy. "Because the recent amendments to the no-fault act were not enacted until after Plaintiff[s'] rights vested under no-fault provisions that did not impose fee schedules," plaintiffs contended that the trial court must determine if the amendments apply retroactively. Plaintiffs argued that MCL 500.3157 contained no language suggesting retroactivity or that it applied to rights "vested under a no-fault policy before their effective date." Thus, plaintiffs presumed that the statute applied prospectively. Additionally, MCL 500.3157 purportedly did not address antecedent events, demonstrating it should not be applied retroactively. Plaintiffs advised that retroactive application was not warranted because it would remove or impair vested rights under existing laws. Finally, retroactivity should not be applied because it would relieve defendant of the duty to pay reasonable and customary charges related to medical treatment free of any fee schedule limits.[8] Accordingly, plaintiff requested that defendant's motion be denied.[9]

Also in June 2022, defendant filed a reply brief, noting that plaintiffs did not challenge its calculation of the amounts owed when the fee schedules in MCL 500.3157 were applied. Rather, plaintiffs asserted that the fee schedules were inapplicable because the payment of the premium and the qualifying injury both occurred before the fee schedule became effective on July 1, 2021. Defendant disputed plaintiffs' contention, noting that the fee schedules were *enacted* in June 2019, four months before plaintiffs purchased defendant's policy and RD suffered his injury. Specifically, the fee schedules were enacted on June 11, 2019, 2019 PA 21, plaintiffs' policy was issued on October 1, 2019, the accident occurred on October 25, 2019, and the fee schedules applied to treatment rendered after July 1, 2021. Because the fee schedules were enacted before every pertinent date, plaintiffs' characterization of the application of the fee schedules as "retroactive" was erroneous. Furthermore, the payment of PIP benefits did not vest on the date of the injury, but rather as the expenses were incurred. Defendant contended that, because MCL 500.3157 set forth *future* payment caps that were identified and enacted before plaintiffs' contract, there were no vested rights destroyed by the legislative amendment. Therefore, plaintiffs'

---

[8] Plaintiffs also claimed that the fee schedules in MCL 500.3157(2)(a) violated the Contract Clause of the Michigan Constitution, Mich Const art 1, § 10, because it impaired contractual obligations. The trial court did not rule on this ground. And, plaintiffs failed to raise it in their brief on appeal or in the counterstatement of questions presented. Accordingly, we do not address it further. See *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013) ("A party abandons an issue when it fails to include the issue in the statement of questions presented in its appellate brief and fails to provide authority in support of its assertions.").

[9] With their answer, plaintiffs submitted a copy of the insurance policy with defendant, the crash report, and an opinion in *Melrose v Nationwide Mut Ins*, Case No. 19-113455-NF, issued August 9, 2021 by the Genesee Circuit Court addressing retroactivity. In *Melrose v Nationwide Mut Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued October 22, 2020 (Docket No. 352843), the *Melrose* plaintiff was injured in 1984, and this Court affirmed the grant of a preliminary injunction to preclude reduction in PIP benefits until the dispute was resolved. The injury in *Melrose* occurred before the no-fault amendments, and the case is factually distinguishable from our case; it does not govern the disposition in this appeal.

challenge premised on retroactivity failed because the fee schedules were the governing law during the pertinent time period.

The trial court heard oral argument on defendant's motion. Plaintiffs' counsel admitted that "the policy of insurance was issued after the statutory amendment," but then claimed that "the statutory amendments were not yet in effect." Counsel further asserted that the parties can contract for more than the minimum required under the no-fault act, and, because the policy addressed "reasonable charges," the policy payment was controlled "under the old rules." In contrast, defendant's counsel argued that, before any of plaintiffs' charges were incurred and before their policy was written, the statute identified future events and applicable coverage. Thus, plaintiffs' argument addressing retroactivity must be rejected. Plaintiffs' policy terms acknowledged that payments were subject to the provisions of the no-fault act. Defense counsel contended that "reasonable charges" applied until July 1, 2021, when 200% of Medicare was the standard.

The trial court stated that both parties offered a reasonable analysis, but concluded that a question of fact was presented, and, therefore, a jury should decide whether the contract provided for reasonable charges in light of the no-fault act. The trial court also noted that it denied similar motions in five other pending cases and was hoping for guidance from an appellate court. The trial court entered an order denying defendant's partial motion for summary disposition.[10] As noted, we granted defendant's application for leave to appeal.

## II. APPLICABLE STANDARDS

A trial court's decision on a motion for summary disposition is reviewed de novo. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 448; 980 NW2d 119 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. at 449. The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

"A decision on a motion for summary disposition and the interpretation of a statute are reviewed de novo." *ADR Consultants, LLC v Mich Land Bank Fast Track Auth*, 327 Mich App 66, 74; 932 NW2d 226 (2019) (citation omitted). Questions pertaining to insurance coverage may also present questions of statutory interpretation subject to de novo review. See *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Beaumont Health v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361109), slip op p 4 (quotation marks and citation omitted). When the statutory language is clear and

---

[10] In July 2022, defendant moved for reconsideration, asserting that palpable error occurred because the trial court misunderstood and was misled about the application of the fee schedules. In August 2022, the trial court denied the motion in a written order, concluding that the arguments were previously raised before and denied by the court.

unambiguous, it must be applied as written. *Nickola v MIC Gen Ins Co*, 500 Mich 115, 123; 894 NW2d 552 (2017). In interpreting the statute, effect must be given to every word, phrase, and clause used in the statute. *Williamson v AAA of Mich*, 343 Mich App 496, 506-507; 997 NW2d 296 (2022) (citation omitted). The plain meaning of every word or phrase must be considered as well as the placement and purpose in the statutory scheme. *Id*. "[A] dictionary may be consulted to ascertain the meaning of an undefined word or phrase." *Le Gassick v Univ of Mich Regents*, 330 Mich 487, 495; 948 NW2d 452 (2019). "In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Frost-Pack Distrib Co v Grand Rapids*, 399 Mich 664, 683; 252 NW2d 747 (1977).

To determine whether a statute should be applied retroactively or prospectively, the legislative intent must govern. *Buhl v City of Oak Park*, 507 Mich 236, 243; 968 NW2d 348 (2021). "[A]pplying a statute to contracts entered into before the effective date of the provision constitutes 'retroactive' application of the statute, even if the contracts are related to conduct that occurred after the effective date of the amendments[.]" *Health Care Ass'n Workers Compensation Fund v Director of Bureau of Worker's Compensation*, 265 Mich App 236, 245; 694 NW2d 761 (2005).

## III. ANALYSIS

Defendant alleges that the trial court erred in denying its motion for partial summary disposition because all relevant events, comprised of policy renewal, accident, injury, and treatment, occurred after the statutory enactment of the amendments to the no-fault act. We agree.

Generally, Michigan's no-fault insurance system presents a comprehensive program of compensation "designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018) (quotation marks and citation omitted). Michigan's Legislature created the no-fault act in 1972 to provide individuals injured in automobile accidents with "assured, adequate, and prompt reparation for certain economic losses." *Andary v USAA Cas Ins Co*, 512 Mich 207, 216; 1 NW3d 186 (2023) (quotation marks and citation omitted). It was determined that this goal would be best achieved through a compulsory insurance system that required motorists to purchase a no-fault insurance policy from a private insurer, receive insurance benefits for injuries sustained in a motor vehicle accident, and forego common-law tort remedies. *Id*. Under the 1972 no-fault act, an insured and injured person was entitled to be reimbursed "a reasonable amount for the products, services, and accommodations rendered," provided the charges did "not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance." *Id*. at 217-218 (quotations marks and citation omitted). In 2019, the Legislature amended the no-fault act in an attempt to control the cost of automobile insurance. *Id*. at 214.

The *Andary* plaintiffs, two individuals who suffered traumatic injuries in automobile accidents before 2019, sought to prevent the defendants, insurance companies, from applying amendments to the no-fault act that would impose reductions to the plaintiffs' uncapped lifetime medical care covered through PIP benefits. *Id*. at 214-215. The issue presented to the *Andary*

Court was whether the new fee schedules and attendant care limitations set forth in MCL 500.3157(7) and (10) applied to individuals who were covered by a PIP policy and suffered injuries before the effective date of the 2019 no-fault amendments. *Id*. at 221. To decide this question, the Court examined no-fault benefits and concluded that "PIP benefits mandated by the no-fault act are both statutory and contractual in nature in cases in which the injured person is provided PIP benefits as a covered individual under the terms of a no-fault insurance policy." *Id*. at 238. And, "the scope of available PIP benefits under an insurance policy vests at the time of injury." *Id*. According to Michigan insurance law, the rights and obligations of the parties vest when the accident occurs. *Id*. "For purposes of a no-fault policy of insurance, this clear statement of law means that neither the insured nor the insurer can unilaterally change the terms of a policy after a covered accident occurs." *Id*. at 239 (footnote omitted). But, "the law in place at the time a contract is entered into is tied to the contract terms." *Id*. at 240. That is, "the formation and execution of a contract occurs against the backdrop of the relevant common, statutory, and regulatory law that exists at the time." *Id*. (footnote omitted). The *Andary* Court noted that a factual scenario could be presented "where the law changed between the time an insurance policy was issued and the injury or loss occurred[.]" *Id*. at 240-241. This scenario could raise the issue of the governing law, but the *Andary* Court declined to address this question, noting that it was not presented. *Id*.

Ultimately, our Supreme Court concluded that the *Andary* plaintiffs' rights to PIP benefits under their respective no-fault insurance policies vested when their injuries occurred and when they became eligible for PIP benefits. This initiated the insurers legal obligations to pay PIP benefits for "all reasonable and necessary medical expenses at the statutorily mandated minimum level, as incorporated into the insurance contract, was triggered." *Id*. at 241-242. To avoid the continued payment of reasonable, uncapped PIP benefits to the *Andary* plaintiffs, the defendants relied on the correct proposition that "a PIP benefits claim for a specific amount of money to pay for medical expenses does not accrue until the expense is actually incurred." *Id*. at 243 (footnote and citations omitted). After examining the test of retroactivity, the Court determined that application of the 2019 amendments to the *Andary* plaintiffs "would constitute a retroactive reduction of their vested contractual rights to receive uncapped PIP benefits pursuant to the insurance policies and incorporated statutes that existed when they were injured." *Id*. at 256-257. Because the Legislature failed to clearly state an intention to apply the new fee schedule limits in MCL 500.3157(7) and (10) retroactively, the Court concluded that "these provisions do not apply to any insured who was injured while covered by an insurance policy issued before June 11, 2019." *Id*. at 257.[11]

In the present case, the factual circumstances are that the amendments to the no-fault act took effect on June 11, 2019, 2019 PA 21, plaintiffs purchased their policy with defendant on October 1, 2019, and the accident occurred on October 25, 2019. In light of these facts, the amendments to the no-fault act may be applied to the insurance contract. The insurance contract took effect after the statutory amendment, and retroactive application of the statutory amendment

---

[11] The *Andary* Court noted that it was not addressing the factual scenario when the law changed between the time an insurance policy was issued and the injury or loss occurred.

does not occur in this instance. See *Health Care Ass'n Workers Compensation Fund*, 265 Mich App at 245.

Nonetheless, plaintiffs contend that the fee schedules located in MCL 500.3157 do not apply to services provided to RD after July 1, 2021. MCL 500.3157 was amended, in pertinent part, to state:

> (1) Subject to subsections (2) to (14), a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury covered by personal protection insurance, or a person that provides rehabilitative occupational training following the injury, may charge a reasonable amount for the treatment or training. The charge must not exceed the amount the person customarily charges for like treatment or training in cases that do not involve insurance.
>
> (2) Subject to subsections (3) to (14), a physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement under this chapter for more than the following:
>
> (a) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 200% of the amount payable to the person for the treatment or training under Medicare.
>
> (b) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 195% of the amount payable to the person for the treatment or training under Medicare.
>
> (c) For treatment or training rendered after July 1, 2023, 190% of the amount payable to the person for the treatment or training under Medicare.

The plain language of MCL 500.3157 provides that the fee schedules apply to treatment or training rendered after July 1, 2021. *Nickola*, 500 Mich at 123.

To avoid the application of the July 1, 2021 fee schedule caps, plaintiffs contend that the *Andary* Court determined that caps in MCL 500.3157 were inapplicable. Specifically, they assert that the language in *Andary* demonstrates that the fee schedules do not apply to insurance policies issued before July 1, 2020.[12] The question in *Andary* related to retroactive application of the amendments to the no-fault act to insureds injured before the amendment of the act and the rates

---

[12] Like the Contracts Clause argument, plaintiffs also abandoned the contention that MCL 500.3157 does not apply retroactively. Specifically, they did not address the factors to determine retroactivity. Rather, they contend that dates delineated in the amended no-fault act support their contention that their policy was not subject to MCL 500.3157 as amended. At oral argument, plaintiffs' counsel conceded that the retroactivity argument was abandoned on appeal.

permitted for reimbursement of services provided. The *Andary* Court acknowledged that the Legislature did not expressly address retroactivity in MCL 500.3157. Consequently, the defendant insurers raised another provision of the no-fault act as demonstrative of the Legislature's intent of retroactivity, citing the addition of MCL 500.2111f to the Insurance Code. The *Andary* Court addressed this argument as follows:

> The amendments that 2019 PA 21 made to MCL 500.3157(7) and (10) appear to be prospective on their face. MCL 500.3157(7) states that the first tier in the new fee schedules applies to "treatment or training rendered after July 1, 2021 . . . ." The limitations on family-provided attendant care in MCL 500.3157(10) apply to care "rendered in the injured person's home . . . ." Thus, on their face, these provisions only apply to treatment or services provided after the relevant effective dates. But these provisions do not explicitly address *to* whom they apply. There is nothing in the clear language of MCL 500.3157, as amended by 2019 PA 21, that suggests an intent to modify the contractual rights of an injured individual who has uncapped PIP benefits and family-provided attendant care that vested prior to the enactment of the amendments, i.e., that the amendments apply retroactively. Thus, we cannot presume that the Legislature intended the amended act to apply to treatment and care provided for those who have a vested contractual right to PIP benefits at the pre-amendment level.
>
> Acknowledging this absence of express legislative intent for retroactive application in MCL 500.3157, [the] defendants point to a new statutory provision created in the Insurance Code by the 2019 no-fault amendments as an implicit indicator of legislative intent for retroactive application. Specifically, [the] defendants rely on the following passage: "An insurer shall pass on, *in filings to which this section applies*, savings realized from the application of [MCL 500.]3157(2) to (12) to treatment, products, services, accommodations, or training rendered *to individuals who suffered accidental bodily injury from motor vehicle accidents that occurred before July 2, 2021*." MCL 500.2111f(8) (emphasis added). As the Court of Appeals observed, this provision does not at all guarantee that there will be savings to pass on. This, however, is not the end of the analysis.
>
> The "filings" language in MCL 500.2111f(8) does not exist in a vacuum. Critically, the savings that MCL 500.2111f(8) instructs insurers to pass on come only from "filings to which this section applies." The filings referred to are proposed insurance rates for new policies that will take effect "after July 1, 2020." MCL 500.2111f(1). Another provision, MCL 500.2105(6), expressly states that the "amendments to this chapter made by the amendatory act that added this subsection apply beginning July 1, 2020." Moreover, insurance policies providing for less than uncapped PIP benefits could not be issued until July 2, 2020. See generally MCL 500.2111f.
>
> Harmonizing these provisions as we must, we acknowledge that while only treatment and services rendered after July 1, 2021, are subject to the amendments at issue, some of the amendments arguably apply to a class of persons injured before that date. At the earliest, the amendments apply to those individuals who were

injured while covered by an insurance policy issued on or after June 11, 2019, which is the general effective date for 2019 PA 21. At the latest, these amendments apply to those individuals who were injured while covered by an insurance policy issued after July 1, 2020, that incorporated the requirements of the 2019 amendments. Under MCL 500.2111f(8), any savings from the class of individuals injured before July 1, 2021, who have no vested right to benefits at the pre-amendment level must be passed on in filings "after July 1, 2020." MCL 500.2111f(1). However, MCL 500.2111f(8) does not reflect a clear expression of legislative intent that MCL 500.3157(7) and (10) apply retroactively to insureds injured while covered by an insurance policy providing them a contractual right to provider reimbursement at the pre-amendment levels. [*Andary*, 512 Mich 248-250 (emphasis in original).]

Contrary to plaintiffs' argument, the *Andary* Court concluded that the amendments to the no-fault act applied at the earliest "to those individuals who were injured while covered by an insurance policy issued on or after June 11, 2019," and at the latest, applied "to those individuals who were injured by an insurance policy issued after July 1, 2020, that incorporated the requirements of the 2019 amendments." The *Andary* Court did not determine, as plaintiffs allege, that it could not apply to their policy that was issued on October 1, 2019 because the amendments to the no-fault act were only applied to policies issued after July 1, 2020.

Our review of MCL 500.2111f reveals that it required an automobile insurer in Michigan to file premium rates for PIP coverage to the insurance director before July 1, 2020. It outlined the average reduction in the premium rate in light of the coverage limits selected by the insured. See MCL 500.2111f(2). The statute also outlined the director's approval determination and the return of cost savings to the insured. MCL 500.211f(4) through (8). The plain language of MCL 500.2111f does not limit its application to insurance policies only issued after July 1, 2020.

Accordingly, our disposition of this matter is not solely contingent upon MCL 500.3157 or MCL 500.2111f. Rather, because PIP benefits required by the no-fault act arise from both statutory and contract law, we must examine whether the injured person is covered under the terms of a no-fault policy and the applicable PIP benefits. *Andary*, 512 Mich at 238. The scope of available PIP benefits vests when the accident occurs. *Id*. This principle of Michigan insurance law prevents both the insured and the insurer from unilaterally changing the terms of a policy after a covered accident occurs. *Id*. at 239 (footnote omitted). Accordingly, we examine the formation and execution of the contract at issue against the relevant statutory law at the time. *Id*. at 240.

Applying these principles to the present case, plaintiffs obtained insurance with defendant. The policy that issued for their 2018 Ford Escape covered the period from October 1, 2019 to April 1, 2020. The premium paid was $2,384.86, but was billed through a payment plan. The policy was labelled an "auto renewal." Defendant's policy booklet addressed PIP coverage and stated that "***We*** will pay, subject to the provisions of the ***No-Fault Act***, for accidental *bodily injury* to an ***insured*** arising out of the ownership, operation, maintenance or use of a ***motor vehicle*** as a ***motor vehicle***[.]" (emphasis in original). The policy booklet also provided that "***No-Fault Act*** means Chapter 31 of the Michigan Insurance Code and any amendments." In this case, the accident occurred on October 25, 2019, 24 days after the policy was in effect. The amendments to the no-fault act took effect on June 11, 2019. Therefore, at the time of the accident, the amended

no-fault act applied. The scope of available PIP benefits vested when the accident occurred on October 25, 2019. *Andary*, 512 Mich at 238. Under Michigan insurance law, the rights and obligations of the parties vest at the time of the accident. *Andary*, 512 Mich at 239. But, a PIP benefits claim for a specific amount of money to pay for medical services does not accrue until the expense is actually incurred.[13] *Id*. at 243 (citations omitted).[14] As noted, although the amendments to the no-fault act took effect on June 11, 2019, MCL 500.3157(2) set forth a reduction in the amount of the benefit covered contingent on the date the service was performed, stating in pertinent part:

> (2) Subject to subsections (3) to (14), a physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement under this chapter for more than the following:
>
> (a) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 200% of the amount payable to the person for the treatment or training under Medicare.
>
> (b) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 195% of the amount payable to the person for the treatment or training under Medicare.
>
> (c) For treatment or training rendered after July 1, 2023, 190% of the amount payable to the person for the treatment or training under Medicare.

Accordingly, for treatment rendered after July 1, 2021 and before July 2, 2022, MCL 500.3157(2)(a) covered 200% of the Medicare rate. Defendant presented documentary evidence addressing the date of the service provided, the bills reflecting the fee charged, the Medicare fee scheduling price, and the computed benefit amount premised on the Medicare schedule. Plaintiffs did not challenge defendant's calculation of the covered benefit amount under

---

[13] Unpublished opinions are not binding precedent, but they may be considered persuasive. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 370; 986 NW2d 451 (2022). Our holding is consistent with the ultimate disposition rendered in *Matti v Tahnun*, unpublished per curiam opinion of the Court of Appeals, issued February 22, 2024 (Docket Nos. 364473; 364975). But the *Matti* Court also addressed the application of MCL 500.3157 in light of MCL 500.2105(6) and the renewal rule. *Id*. at ___; slip op at 4-9. Our plaintiffs raised the issue of the renewal rule in the trial court, but did not challenge it in this appeal, thereby abandoning this challenge. See *Maple BPA, Inc*, 302 Mich App at 517.

[14] The *Andary* Court noted that "Pre-2019 PIP-policies differ . . . from policies containing express monetary limits for medical expenses or requiring an insured to continue paying premiums as a condition for receiving reimbursement for ongoing medical expenses." *Andary*, 512 Mich at 245-246.

the amended no-fault act.  Therefore, the trial court erred in denying defendant's motion for partial summary disposition.[15]

Reversed and remanded for entry of an order granting defendant's motion for partial summary disposition.  We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Anica Letica

---

[15] Plaintiffs contend that their argument is supported by *Progressive Marathon Ins Co v Pena*, ___ Mich App ___; ___ NW2d ___ (2023), lv pending.  In *Pena*, this Court rejected the contention that, after July 1, 2020, the higher liability limits for bodily injury delineated in MCL 500.3009 automatically applied and noted MCL 500.3107c(1) allowed a named insured to select their PIP coverage amount for policies issued or renewed after July 1, 2020.  *Id*. at ___, slip op at 4-5.  *Pena* does not control this case.