COURT OF APPEALS

ROBERT AGUIRRE, LAURIN THOMAS, JOHN
SULLIVAN, JAMES ATTERBERRY SR., TED
HAMMON, and ARTINA HARDMAN,

      Plaintiffs-Appellants,

v

STATE OF MICHIGAN and DEPARTMENT OF
CORRECTIONS,

      Defendants-Appellees.

FOR PUBLICATION
June 14, 2016
9:10 a.m.

No. 327022
Court of Claims
LC No. 11-000129-MK

Before: SAWYER, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Following a remand from this Court, plaintiffs, Robert Aguirre, Laurin Thomas, John
Sullivan, James Atterberry, Sr., Ted Hammon, and Artina Hardman (collectively, "the
members"), appeal as of right the trial court's order denying their motion for summary
disposition, denying their motion to amend their complaint, and granting summary disposition in
favor of defendants, the Department of Corrections (the Department) and the state of Michigan
(collectively, "the State"). Because the members have failed to state a viable claim of a
constitutional Contract Clause violation and an amendment to add such a claim would be futile,
we affirm.

I. FACTS

The basic facts giving rise to this dispute were succinctly set forth in this Court's
previous opinion as follows:

In 1992, the Michigan Legislature established "a parole board consisting
of 10 members" within the Department. In 2009, Governor Jennifer Granholm
reorganized the Department, abolished the parole board, and created the 15–
member Parole and Commutation Board.

The members were members of the Parole and Commutation Board. The
members each received a letter of appointment from the Governor's office.
Hardman's term was from April 19, 2009, to November 20, 2012, Sullivan,
Aguirre, and Hammon's terms were from December 1, 2009, to November 30,

-1-

2013, and Thomas and Atterberry's terms were from December 1, 2010, to November 30, 2014.

*\*\**

In 2011, by ERO 2011–3, Governor Rick Snyder abolished the Parole and Commutation Board and created a new Parole Board. ERO 2011–3 provided in § III(A) that the new Parole Board "shall consist of 10 members appointed by the Director of the Department of Corrections." Section II(A) of ERO 2011–3 transferred to the new Parole Board

> [a]ll of the authority, powers, duties, functions, responsibilities, records, personnel, property, and unexpended balances of appropriations, allocations, or other funds of the Michigan Parole and Commutation Board[.]

Section V(B) provided that

> [a]ll rules, orders, contracts, and agreements relating to the transfers under this Order lawfully adopted prior to the effective date of this Order shall continue to be effective until revised, amended, repealed, or rescinded.

ERO 2011–3 granted the director of the Department of Corrections the power to appoint Parole Board members. The director did not appoint any of the members to serve as members on the new Parole Board. [*Aguirre v Dep't of Corrections*, 307 Mich App 315, 317-318; 859 NW2d 267 (2014) (footnotes omitted).]

## II. PROCEDURAL HISTORY

On January 5, 2012, the members filed suit against the State, alleging a breach of contract and a claim of promissory estoppel. Both parties moved for summary disposition. The trial court granted the members' motion for summary disposition and denied the State's motion for summary disposition. As summarized in this Court's previous opinion:

> The trial court concluded that the members' letters of appointment continued to be effective after ERO 2011–3. The trial court also concluded that ERO 2011–3 transferred the members' contracts from the Parole and Commutation Board to the Parole Board. The trial court agreed that the Governor had authority to eliminate the members' positions, but concluded that their contracts remained valid and the termination breached their contracts. [*Aguirre*, 307 Mich App at 319.]

The State appealed, and this Court reversed and remanded for further proceedings. In doing so, this Court made two main holdings relevant to the dispute now before us. First, assuming for the sake of argument that the members had a contract with the State, this Court

determined that ERO 2011-3 abolished the members' positions, and that this abolishment did not constitute a breach of contract.[1]  *Aguirre*, 307 Mich App at 323-325, 327.  Second, this Court considered the members' constitutional challenges and determined that the abolishment of the members' positions was "permissible."  *Id.* at 322.  Specifically, we rejected claims that eliminating positions violated the good-cause termination provisions found in Const 1963, art 5, § 10, and instead characterized Governor Snyder's actions as the reorganization of an executive department and the elimination of positions under the governor's plenary control over the organization of the executive branch under Const 1963, art 5 § 2.  See *Aguirre*, 307 Mich App at 317, 321, 325-326.

While largely resolving the parties' dispute, this Court noted that the members had asserted, as an alternative ground for affirmance, that the reorganization of the parole board violated the Contracts Clause of the Michigan Constitution, Const 1963, art 1 § 10.  However, we declined to address this issue on appeal because it had not been decided by the trial court and we reasoned that "[o]ur analysis of this issue would benefit from a decision of the trial court and full argument."  *Aguirre*, 307 Mich App at 326.  Consequently, while reversing the trial court's grant of summary disposition to the members and its denial of summary disposition to the State, we left open the question of whether ERO 2011-3 violated the Contracts Clause of the Michigan Constitution and we remanded for further proceedings consistent with our opinion.

On remand, the trial court granted summary disposition to the State "as to all issues in the Complaint except that preserved [in] the Court of Appeals on the issue of **Unconstitutional Impairment of Contract**."[2]  The parties then filed cross motions for summary disposition in

---

[1] On appeal, the members assert that this Court's previous opinion did not resolve all their arguments pertaining to their breach of contract claim.  In particular, the members maintain that this Court addressed the breach claim in terms of the members' argument that their contracts transferred to the new parole board and that those transferred contracts were then breached by their subsequent termination.  The members argue that we did not decide whether the reorganization was itself a breach of contract.  We do not read our previous decision so narrowly.  We plainly rejected their breach of contract claim, *Aguirre*, 307 Mich App at 323-325, 327, and the law of the case forecloses further consideration of this question.  See *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013).  In any event, as discussed *infra* in the context of the members' Contract Clause argument, the members do not have a contract right to hold their positions for the appointed term in contravention of the governor's constitutional reorganization authority.  Applying the same reasoning, the governor's reorganization of the Department could not have resulted in a breach of contract if the alleged contractual right to hold the positions did not exist in the first place.  See *AFT Mich v Michigan*, 497 Mich 197, 210 n 2; 866 NW2d 782 (2015).

[2] On appeal, the members note that, when granting summary disposition, the trial court did not expressly address their promissory estoppel claim, and they maintain that the grant of summary disposition as to this claim should be reversed.  This argument is without merit.  Given this Court's previous decision, the only question open on remand was the Contract Clause issue and thus, consistent with this Court's directives, the trial court properly granted summary disposition

relation to the Contracts Clause issue, and the members filed a motion to amend their complaint to add a claim that ERO 2011-3 violated the Contracts Clause of the Michigan Constitution and the United States Constitution, US Const, Art I, § 10. Because this count was not contained in the members' original complaint, the trial court concluded that the State was entitled to summary disposition under MCR 2.116(C)(8). However, the court also considered whether the members should be allowed to amend their complaint under MCR 2.116(I)(5), and the court determined that such amendment would be futile. The court offered several reasons for this conclusion, most notably explaining that the governor's constitutional power to recognize the executive branch in the future was an implicit term of any contract that the members might have with the State. Reasoning that the members must have contracted "with reference to this fundamental law," the court concluded that, under *Harsha v Detroit*, 261 Mich 586, 595; 246 NW 849 (1933), their contract could not have been impaired by Governor Snyder's exercise of his constitutional authority and thus the members' Contract Clause argument was without merit. Consequently, the trial court denied the members' motion to amend their complaint, denied the members' motion for summary disposition, and granted the State's motion for summary disposition. The members now appeal to this Court as of right.

### III. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of summary disposition. *Detroit Edison Co v Stenman*, 311 Mich App 367, 377; 875 NW2d 767 (2015). Constitutional questions are reviewed de novo. *Studier v Mich Pub Sch Employees' Ret Bd*, 472 Mich 642, 649; 698 NW2d 350 (2005). Likewise, whether a contract exists is a question of law to be reviewed de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). When a contract is found to exist, "questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Finally, a trial court's decision on a motion to amend a complaint is reviewed for an abuse of discretion. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014).

### IV. ANALYSIS

On appeal, the members begin their argument with the assertion that they have fully enforceable contractual rights in their Parole and Commutation Board offices for the term of

---

"as to all issues in the Complaint" except the Contract Clause issue. See *K & K Const, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544; 705 NW2d 365 (2005) ("[W]hen an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order."). In any event, it is clear that the members' promissory estoppel claim is without merit. Among other elements, promissory estoppel requires a promise that produced reliance, and "the reliance on it must be reasonable." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008). In light of the governor's known plenary authority to reorganize the Department as discussed in more detail *infra*, any reliance on assurances of continued employment could not be considered reasonable.

years set forth in their letters of appointment.[3]  Given these purported contractual rights, the members contend that Governor Snyder's elimination of their positions under ERO 2011-3 constituted an unconstitutional impairment of the members' contracts in violation of the Michigan and the United States Constitutions.  Notably, in making these arguments, the members in no way dispute the legality of ERO 2011-3 insofar as it represented an exercise of the governor's plenary authority to reorganize the executive branch under Const 1963, art 5, § 2.  Instead, the members characterize the issue as whether the State is liable for monetary damages when the governor exercises this constitutional authority to eliminate executive positions, thereby purportedly impairing the members' contractual right to their positions—and their related employment benefits—for the time period defined in their letters of appointment.  For the reasons stated below, we find this argument to be without merit.

## A.  THE CONTRACT CLAUSE

"Both the Michigan and United States Constitutions prohibit laws that impair obligations under contracts."[4]  *AFT Mich*, 497 Mich at 232-233. "These clauses provide that vested rights acquired under a contract may not be destroyed by subsequent state legislation."[5]  *Seitz v Probate Judges Ret Sys*, 189 Mich App 445, 455; 474 NW2d 125 (1991).  "However, the Contract Clause prohibition on state laws impairing the obligations of contract is not absolute."  *Health Care Ass'n Workers Comp Fund v Dir of the Bureau of Worker's Comp, Dep't of Consumer & Indus Services*, 265 Mich App 236, 240; 694 NW2d 761 (2005) "Rather, the prohibition must be

---

[3] The members suggest that the State has conclusively conceded that the members have enforceable contracts and that the trial court's finding, during a 2013 hearing, that the members had contracts is somehow "binding."  The members are mistaken.  The existence of a contract is a question of law which we review de novo, *Kloian*, 273 Mich App at 452, and the parties' agreements as to the law are not binding on this Court, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 385; 741 NW2d 61 (2007).  This Court did not decide this question during the previous appeal and instead remanded for "full argument" on the Contract Clause issue.  We note also that the State has denied the existence of a contract and briefed the matter, on remand and on appeal, in relation to the members' Contract Clause claim.  In short, there has been no binding determination of this issue, and we consider it properly before us at this time.

[4] U.S. Const, art I, § 10 states, in part, "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."  Similarly, Const 1963, art 1, § 10 states: "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted."  These provisions have typically been interpreted to provide coextensive protections against the impairment of a contractual relationship.  *AFT Mich*, 497 Mich at 233.

[5] Although the present case involves an executive order, we note that an executive order under Const 1963, art 5, § 2 "has the status of enacted legislation," *Health Care Ass'n Workers Comp Fund v Dir of the Bureau of Worker's Comp, Dep't of Consumer & Indus Servs*, 265 Mich App 236, 250; 694 NW2d 761 (2005), and we will treat it as such for purposes of analyzing the members' Contract Clause claims.

accommodated to the inherent police power of the State to safeguard the vital interests of its people." *Id.* at 240-241 (citation and quotation marks omitted).

Consequently, when examining whether a state law substantially impairs an existing contract, courts apply a three pronged balancing test, "with the first prong being a determination whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *In re Certified Question*, 447 Mich 765, 777; 527 NW2d 468 (1994) (citation omitted). See also *Blue Cross & Blue Shield of Mich v Milliken*, 422 Mich 1, 21; 367 NW2d 1 (1985). Under this first prong of the analysis, "[w]hether a change in state law has resulted in 'a substantial impairment of a contractual relationship' itself requires consideration of three factors: [1] whether there is a contractual relationship, [2] whether a change in law impairs that contractual relationship, and [3] whether the impairment is substantial." *Gillette Commercial Operations N Am & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 408; __ NW2d __ (2015). For purposes of this analysis, "an impairment takes on constitutional dimensions only when it interferes with reasonably expected contractual benefits." *Id.*, quoting *Borman, LLC v 18718 Borman, LLC*, 777 F3d 816, 826 (CA 6 2015). If it is determined that the state law resulted in a substantial impairment of a contractual relationship, courts must then examine the second and third prongs, as follows: whether "the legislative disruption of contract expectancies be necessary to the public good" and whether "the means chosen by the Legislature to address the public need are reasonable." *In re Certified Question*, 447 Mich at 777 (citations omitted).

The protection offered by the Contract Clause can be applied to prevent the impairment of the state's own contractual obligations. See *US Trust Co of New York v New Jersey*, 431 US 1, 23; 97 S Ct 1505; 52 L Ed 2d 92 (1977). That is, by contract, the Legislature may contractually bind successive Legislatures to agreements. *Studier v Mich Pub Sch Employees' Ret Bd*, 472 Mich 642, 661; 698 NW2d 350 (2005). However, "such surrenders of legislative power are subject to strict limitations that have developed in order to protect the sovereign prerogatives of state governments." *Id.* Among these protections of sovereignty is the "'reserved power' doctrine, which held that certain substantive powers of sovereignty could not be contracted away." *United States v Winstar Corp*, 518 US 839, 874; 116 S Ct 2432; 135 L Ed 2d 964 (1996). In other words, when analyzing a Contract Clause claim in the context of a contract with the state, there must be "a determination of the State's power to create irrevocable contract rights in the first place." *US Trust Co of New York*, 431 US at 23. Additionally, the distinct "unmistakability doctrine" provides that, when governmental powers may be contracted away, such surrender will not be presumed or inferred, but must be "expressed in terms too plain to be mistaken." *Windstar Corp*, 518 US at 875.

## B. CONTRACT RIGHTS TO PUBLIC OFFICE

In Michigan, appointment to public office does not create a contractual right to hold that office, any holder of public office necessarily accepts the position with the knowledge that he or she may be removed as provided by law, and an express contract interfering with the power to

abolish an office in the manner provided by law would be void as against public policy.[6]  In particular, well over 100 years ago, our Supreme Court acknowledged that "[n]othing seems better settled than that an appointment or election to a public office does not establish contract relations between the person appointed or elected and the public." *Attorney Gen v Jochim*, 99 Mich 358, 368; 58 NW 611 (1894).  See also *Molinaro v Driver*, 364 Mich 341, 350; 111 NW2d 50 (1961); *Robbins v Wayne Co Bd of Auditors*, 357 Mich 663, 667; 99 NW2d 591 (1959).  "A public office cannot be called 'property,'" and it does not provide the officer with a vested right to hold his or her office until the expiration of the term.  *Attorney Gen*, 99 Mich at 367.  Rather, "[a]n office is a special trust or charge created by competent authority." *Solomon v Civil Serv Comm, City of Highland Park*, 64 Mich App 433, 438; 236 NW2d 94 (1975) (citation omitted).

> Public officers are created for the purposes of government.  They are delegations of portions of the sovereign power for the welfare of the public.  They are not the subjects of contract, but they are agencies for the state, revocable at pleasure by the authority creating them, unless such authority be limited by the power which conferred it.  [*Attorney Gen*, 99 Mich at 367.]

Thus, "except as it may be restrained by the constitution, the legislature has the same inherent authority to modify or abolish that it has to create; and it will exercise it with the like considerations in view." *Id.* at 368.  Indeed, absent a constitutional prohibition, an office may be lawfully abolished "within the terms for which the incumbents were elected or appointed." *MacDonald v De Waele*, 263 Mich 233, 235; 248 NW 605 (1933).

---

[6] At the outset we note that, in our judgment, the members' positions on the Parole and Commutation Board were of such importance, dignity and independence as to be properly characterized as public offices rather than mere employment.  See *People v Coutu*, 459 Mich 348, 354; 589 NW2d 458 (1999) (enumerating the distinguishing features of a "public office"); *Council of Organizations & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 585 n 22; 566 NW2d 208 (1997) (same).  First, the positions were created incident to the governor's authority under Const 1963, Art 5, § 2, which, in the absence of legislative veto, has the same status as enacted legislation.  *Straus v Governor*, 459 Mich 526, 534; 592 NW2d 53 (1999).  See also MCL 16.134; MCL 791.304.  Second, as members of the Parole and Commutation Board, the members exercised sovereign power while engaged in the discretionary discharge of their duties.  See generally *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003).  Third, the powers and duties exercised by the members are set forth by statute as conferred by executive order.  See MCL 791.304; ERO 2009-3.  Fourth, while the Parole and Commutation Board is an entity within the Department, ERO 2009-3, *In re Parole of Bivings*, 242 Mich App 363, 372; 619 NW2d 163 (2000), these offices were created and placed within the Department as provided by law.  Cf. *Coutu*, 459 Mich at 355.  Fifth, the positions were not created as temporary positions.  Finally, the members were required to take an oath of office.  See *id.* at 356.  In short, the members held public offices and "are subject to all applicable law pertaining to public officials." *Council of Organizations & Others for Ed About Parochiaid, Inc*, 455 Mich at 585 & n 22.

Because an officer has no vested property right to the office, the constitutional protections of the Contract Clause do not apply and, when an office is abolished or an officer lawfully removed, he or she is not entitled to payment for future services which would have been rendered but for the elimination of the office. See *Butler v Commonwealth of Pennsylvania*, 51 US 402, 416-417; 13 L Ed 472 (1850).

> The selection of officers, who are nothing more than agents for the effectuating of such public purposes, is [a] matter of public convenience or necessity, and so too are the periods for the appointment of such agents; but neither the one nor the other of these arrangements can constitute any obligation to continue such agents, or to re-appoint them, after the measures which brought them into being shall have been found useless, shall have been fulfilled, or shall have been abrogated as even detrimental to the well-being of the public. The promised compensation for services actually performed and accepted, during the continuance of the particular agency, may undoubtedly be claimed, both upon principles of compact and of equity; *but to insist beyond this on the perpetuation of a public policy either useless or detrimental, and upon a reward for acts neither disired nor performed, would appear to be reconcilable with neither common justice nor common sense.* The establishment of such a principle would arrest necessarily every thing like progress or improvement in government; or if changes should be ventured upon, the government would have to become one great pension establishment on which to quarter a host of sinecures. [*Id.* (emphasis added).]

Given the reality that public offices may be abolished as provided by law, an individual who accepts a public office, takes that position "subject to the contingency that it may be abolished lawfully." *Sprister v City of Sturgis*, 242 Mich 68, 72; 218 NW 96 (1928). See also *Attorney Gen*, 99 Mich at 368, 370 ("One of the constitutional conditions upon which the respondent took his office was that he would be subject to removal by the Governor . . . ."). Moreover, when the power of appointment or removal is provided for by law, the future exercise of this governmental power of appointment or removal typically cannot be bargained away by contract. See, e.g., *City of Hazel Park v Potter*, 169 Mich App 714, 720; 426 NW2d 789 (1988).[7] A contract to limit a future governing body's lawful power of removal or appointment of a public officer is considered void as a matter of public policy. See, e.g., *id.* (holding written employment contract with a city manager was void where it deprived incoming city counsel of power to select and appoint a city manager as provided in the city charter). And, a party

---

[7] See also *US Trust Co of New York*, 431 US at 22 ("One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them."); *Detroit v Div 26 of Amalgamated Ass'n of St, Elec Ry & Motor Coach Employees of Am*, 332 Mich 237, 252; 51 NW2d 228 (1952) ("To the extent that terms and conditions of public employment are governed by statute or charter, they are not subject to modification by contract . . . ."); *Thorin v Bloomfield Hills Bd of Ed*, 203 Mich App 692, 702; 513 NW2d 230 (1994) (finding that a public employee could not have entered into a contract for longer period of employment than that permissible by statute).

conducting business with the state is charged with understanding the extent of any limitations on the appointing official's authority to bind the state. See *Roxborough v Mich Unemployment Comp Comm*, 309 Mich 505, 511; 15 NW2d 724 (1944).

## C. GOVERNOR'S POWER TO REORGANIZE THE EXECUTIVE BRANCH

As we discussed in our previous opinion in this case, under Const 1963, Art 5, § 2, "the governor may make changes in the organization of the executive branch or in the assignment of functions among its units which he considers necessary for efficient administration." The governor's power under Const 1963, art 5, § 2, "is nearly plenary" and "is limited only by constitutional provisions that would inhibit the Legislature itself." *Straus*, 459 Mich at 534. "The Framers of the Michigan Constitution desired to give the Governor real control over the executive branch," including the power to appoint officials, *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 144; 807 NW2d 866 (2011), and to abolish positions, *Aguirre*, 307 Mich App at 326-327; *Morris v Governor*, 214 Mich App 604, 609; 543 NW2d 363 (1995). "The constitution, then, specifically recognizes that, where the Governor feels compelled to make certain changes within the executive branch, he has authority, through the executive order procedure, in effect, to enact laws to carry out those changes." *House Speaker v Governor*, 443 Mich 560, 579; 506 NW2d 190 (1993).

## D. APPLICATION

In view of the foregoing, in this case, the members' Contract Clause claim is without merit because they do not have, and cannot have, a contract that entitles them to serve a set term of years on the Parole and Commutation Board in contravention of the governor's plenary authority to abolish offices within the executive branch.[8] That is, when the members accepted their appointments to the Parole and Commutation Board, they necessarily did so subject to the contingency that their positions could be lawfully abolished in the future, even during the term of their appointments. *MacDonald*, 263 Mich at 235; *Sprister*, 242 Mich at 72; *Attorney Gen*, 99 Mich at 368, 370. The governor has nearly plenary authority under Const 1963, Art 5, § 2 with regard to the reorganization of the executive branch, and Governor Granholm was without authority to contractually surrender or impede a future governor's constitutional authority to

---

[8] On appeal, the members cite *Bracco v Mich Technological Univ*, 231 Mich App 578, 588; 588 NW2d 467 (1998), for the proposition that public employees may form contractual employment relationships with public employers. We do not hold otherwise, and we do not suggest that the members were not contractually entitled to compensation and benefits relating to the time that they held their positions. See *Butler*, 51 US at 416-417; *Fisk v Police Jury of Jefferson*, 116 US 131, 134; 6 S Ct 329, 330; 29 L Ed 587 (1885). Instead, applying long-established caselaw, we hold only that a public officer may not form a contract to hold an office for a set term of appointment when the term of appointment would interfere with the exercise of the governor's plenary reorganizational authority over the executive branch under Const 1963, Art 5, § 2. See *Butler*, 51 US at 416-417; *MacDonald*, 263 Mich at 235; *Sprister*, 242 Mich at 72; *Attorney Gen*, 99 Mich at 368, 370. See also *City of Hazel Park*, 169 Mich App at 720.

reorganize the Department by guaranteeing the members a set term of appointment in contravention of a future governor's reorganization power. Cf. *City of Hazel Park*, 169 Mich App at 720. See also *Mich Farm Bureau*, 292 Mich App at 144 ("For our constitutional framework to operate as it was intended, each newly elected governor must possess the power and ability to manage the bureaucracy, to supervise the administrative agencies, and to influence those agencies' rulemaking decisions through his or her appointments and directives."). When conducting business with the state, the members were charged with knowledge of such limitations on the Governor Granholm's authority. See *Roxborough*, 309 Mich at 511. In other words, as the trial court aptly recognized, the members dealing with the State must have contracted "with reference" to the governor's fundamental power of reorganization. Cf. *Harsha*, 261 Mich at 595.

It follows that the members do not have vested rights to hold their positions on the Parole and Commutation Board for their full term of appointment in contravention of the governor's plenary authority to abolish the positions as provided by law. See *Butler*, 51 US at 416-417; *Attorney Gen*, 99 Mich at 367. There being no vested contractual right to the continued existence of the Parole and Commutation Board or to hold a position on the board for a set period of time in contravention of the governor's reorganization power, there can be no impairment of a contract by ERO 2011-3. See *Butler*, 51 US at 416-417; *Harsha*, 261 Mich at 595; *Gillette*, 312 Mich App at 408, 414. Consequently, the trial court properly granted the State's motion for summary disposition, denied the members' motion for summary disposition, and denied the members' motion to amend their complaint as any amendment would be futile.

Affirmed.


/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder