*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* THOMAS LIS TRUST.

---

STANLEY F. LIS and DAVID M. DELANEY,

      Appellants,

v

CHRISTINE PILARSKI, CARL RYBINSKI, and JAMES R. ABBEY, Trustee of the THOMAS LIS TRUST,

      Appellees.

UNPUBLISHED
May 08, 2025
3:26 PM

No. 365899
Tuscola Probate Court
LC No. 22-037442-TV

---

*In re* THOMAS LIS TRUST.

---

STANLEY F. LIS and DAVID M. DELANEY,

      Appellants,

v

JULIE OGINSKI, CHRISTINE PILARSKI, and JAMES R. ABBEY, Trustee of the THOMAS LIS TRUST,

      Appellees.

No. 367203
Tuscola Probate Court
LC No. 22-037442-TV

---

Before: BORRELLO, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

-1-

In Docket No. 365899, appellants Stanley F. Lis (Stanley) and David M. Delaney (David) (referred to collectively as appellants) appeal as of right an April 13, 2023 order removing them as co-trustees of the Thomas Lis Trust (the trust) and granting other relief. In Docket No. 367203, appellants appeal as of right a July 21, 2023 order requiring the trust to pay particular beneficiaries' attorney fees and providing that the trust shall collect the surcharged amounts from appellants. The appeals were consolidated. *In re Thomas Lis Trust*, unpublished order of the Court of Appeals, entered August 21, 2023 (Docket Nos. 365899 and 367203). Appellants have filed a single principal appellate brief encompassing both appeals. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case involves disputes arising from the trust agreement executed by Thomas Lis (referred to as Thomas) on July 7, 1996. Thomas was both the grantor and the original trustee of the trust. The trust agreement named the appellants as successor co-trustees to serve upon Thomas's death or incapacity. Thomas and Stanley were cousins, and David is an attorney married to Stanley's sister, Julie Delaney. Thomas passed away on November 3, 2020, after which the appellants became co-trustees. At the time of his death, Thomas was not married. The total value of the trust assets is approximately $2.7 million. There are 17 beneficiaries; 16 of them are set to receive cash distributions, while the 17th beneficiary, appellee Christine Pilarski, received real estate, specifically the farm property where Thomas lived.

There were 11 named cash beneficiaries. Of these, only four are still alive. The children of three deceased named beneficiaries make up the remaining 17 beneficiaries. One of the beneficiaries, appellee Carl Rybinski (Carl), filed a petition to remove the appellants as co-trustees. Similar relief was also sought by Pilarski. A bench trial regarding the removal petitions was held over seven dates spanning December 2022, January 2023, and March 2023. At the beginning of the trial, Carl's attorney explained that he was additionally representing two other beneficiaries, Julie Oginski and Mary Herc. Pilarski's attorney was also representing Pilarski's father, Steve Rybinski (Steve). Carl, Herc, Julie Oginski, and Steve are siblings and the only four living named cash beneficiaries among the eleven cash beneficiaries stated in the trust agreement.

At the conclusion of the trial, the court decided to remove appellants as co-trustees, finding they had committed serious breaches of trust on multiple grounds. These included: failing to promptly transfer the farm property to Pilarski and demanding that she pay a 10% trustee fee to receive the property; not providing beneficiaries with a copy of the trust agreement in a timely manner; failing to supply required inventories and accountings; not timely filing an estate regarding Thomas's pour-over will; improperly giving away, selling, or auctioning off various items; and selectively insisting on a 10% trustee fee for only certain gifts or distributions. The court concluded that David had engaged in conduct unbecoming of an attorney and allowed Stanley to take on most of the responsibility and work associated with administering the trust.

The court adopted a distribution formula favored by Carl and Julie Oginski rather than the one proposed by appellants. It appointed James Abbey, a local attorney, as the successor trustee. In its ruling, the court determined that appellants would be responsible for their own attorney fees. Later, when petitions for attorney fees were filed, the court ruled that the trust would cover the

attorney fees for Carl, Julie Oginski, Herc, Pilarski, and Steve, and that the trust would subsequently seek to collect these amounts from the appellants as a surcharge. These appeals followed.

## II. ANALYSIS

### A. JUDICIAL DISQUALIFICATION

Appellants first argue that the trial judge should have sua sponte raised the issue of her disqualification because, during the proceedings in this case, attorneys for appellees referenced attorney grievances that had been filed against David.

In order to preserve an issue of judicial disqualification, a party must, *inter alia*, file a motion to disqualify the trial judge within 14 days of discovering the basis for disqualification. *Kloian v Schwartz*, 272 Mich App 232, 244; 725 NW2d 671 (2006); see also MCR 2.003(D)(1)(a). Appellants did not file a motion to disqualify the trial judge in response to the actions and statements in the lower court of which they now complain on appeal.  Therefore, the issue is unpreserved.

In civil cases, an issue is deemed waived if it was not raised in the trial court.  *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 293-294; 14 NW3d 472 (2023). The plain-error rule applicable in criminal cases does not apply to civil cases, with the exception of certain specific types of civil cases not at issue here.[1]  *Id*. at 294.  "If a [civil] litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. at 289.  But "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290 (quotation marks and citations omitted).

Because appellants in this case failed to preserve their judicial disqualification argument, the issue is waived and need not be considered.  *Id*. Appellants have not provided any justification for ignoring the lack of preservation. Appellants offer no basis for overlooking the lack of preservation and fail to provide any evidence that would lead us to conclude that failure of the trial court to remove itself from these proceedings resulted an any injustice, let alone a manifest injustice.  They cannot rely on this Court to make their arguments for them, and the failure to adequately brief the argument constitutes abandonment of the issue. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019).  We therefore will not consider this issue further.

### B. SUPREME COURT ADMINISTRATIVE OFFICE FORMS

Appellants next argue that the trial court erred in requiring them to pay $2,000 in attorney fees for failing to use State Court Administrative Office (SCAO) forms for an inventory and an

---

[1] For example, this Court explained that its holding in *Tolas Oil* did not apply to termination of parental rights cases because they present different constitutional considerations. *Tolas Oil*, 347 Mich App at 294 n 3.

accounting. Appellants assert that these forms are inapplicable in a trust case. Appellants' argument is unavailing as it fails to address the full basis of the trial court's decision.

A probate court's decision to award attorney fees is reviewed for an abuse of discretion. *In re Adams Estate*, 257 Mich App 230, 236; 667 NW2d 904 (2003). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes or when the court fails to operate within the correct legal framework." *In re Guardianship of Brosamer*, 328 Mich App 267, 271; 936 NW2d 870 (2019) (quotation marks and citation omitted).

MCL 700.7814(3) provides, in relevant part:

A trustee shall send to the distributees or permissible distributees of trust income or principal, and to other qualified or nonqualified trust beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust property and, if feasible, their respective market values, and, if applicable, any disclosure required under section 7802(5).

On April 13, 2023, the trial court issued an order removing the appellants as co-trustees. The court directed them to prepare and submit a complete accounting of trust assets, as well as an inventory of assets that Julie Delaney and Stanley had taken. After the appellants filed their accounting and inventory, certain beneficiaries raised objections to these documents. The court upheld the objections, stating that the accounting and inventory submitted by the appellants did not meet statutory requirements and were inadequate or unclear. The court then ordered the appellants to use the proper court forms to prepare a more comprehensive accounting and inventory. Additionally, the appellants were required to pay an extra $2,000 in attorney fees to cover the costs incurred by the beneficiaries in filing the objections.

Appellants later filed a motion for relief from the court's order, arguing that the court had incorrectly referenced SCAO forms that were not applicable to trust cases. Appellants contend that they should not have been sanctioned for failing to use irrelevant forms. However, the court denied their motion for relief, stating that the accounting and inventory submitted by the appellants were difficult to read and understand. This was the reason the court had ordered the use of SCAO forms. The court continued:

If you need to supplement it and/or add additional pages or something of that nature, that's fine. The [c]ourt understands that. But I want it laid out in a way that everyone can read and figure out what's going on. Because I have a successor trustee [i.e., Abbey] that needs that assistance in this matter.

The appellants' argument regarding this issue fails to fully address the trial court's decision. They focus solely on the court's reference to SCAO forms and neglect to acknowledge that the court determined the accounting and inventory they filed were unclear and incomplete. The court concluded that a more comprehensive accounting and inventory were necessary for the benefit of the successor trustee, Abbey. By directing the appellants to use court forms, the court aimed to ensure compliance with statutory reporting requirements. The shortcomings of the

previously ordered inventory and accounting resulted in the court imposing attorney fees for the time spent by counsel for the beneficiaries. "When an appellant fails to address the basis of a trial court's decision, this Court need not even consider granting relief." *Seifeddine*, 327 Mich App at 522. Additionally, appellants do not cite any authority that prohibits the adaptation of court forms from one type of case to another. As the trial court noted, appellants had the option to supplement the court forms or use additional pages if necessary. The court's reasoning indicates a greater degree of flexibility than appellants are willing to acknowledge. Overall, appellants failed to demonstrate any error in requiring them to pay attorney fees for the time spent by counsel for addressing the objections to their inadequate inventory and accounting.

## C. ANNUAL ACCOUNTINGS IN 2022 AND 2023

Appellants next argue that the trial court erred in finding that they did not provide annual accountings in 2022 and 2023. Appellants' argument on this issue is cursory, taking up less than a page, and they fail to cite authority in support of their argument (other than a case cited in support of an inapplicable standard of review). "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position." *Seifeddine*, 327 Mich App at 519. "Failure to adequately brief an issue constitutes abandonment." *Id*. at 520.

## D. INVENTORY

Appellants next argue that the trial court erred in requiring them to provide an inventory of personal property. Appellants suggest that an inventory should not be required because neither the Michigan Trust Code (MTC), MCL 700.7101 *et seq*., nor the trust agreement uses the word "inventory."

This Court "review[s] de novo issues of statutory interpretation, which are questions of law." *In re Conservatorship of Murray*, 336 Mich App 234, 239; 970 NW2d 372 (2021). This Court "must ascertain the legislative intent that may reasonably be inferred from the statutory language itself." *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005). "When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted." *Id*. "The interpretation of a trust agreement is also a question of law reviewed de novo on appeal." *Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015). "[A] court must enforce the plain and unambiguous terms of a trust [agreement] as they are written." *Id*. at 694.

As explained earlier, a provision of the MTC, MCL 700.7814(3), provides, in relevant part:

A trustee shall send to the distributees or permissible distributees of trust income or principal, and to other qualified or nonqualified trust beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust property and, if feasible, their respective market values, and, if applicable, any disclosure required under section 7802(5).

-5-

The MTC thus requires an annual report of trust property that includes, *inter alia*, "a listing of the trust property and, if feasible, their respective market values . . . ." Although the word "inventory" is not used, the statutory language is consistent with that term. An inventory is "an itemized list of current assets: as (1): a catalog of the property of an individual or estate . . . ." *Merriam-Webster's Collegiate Dictionary* (11th ed). The fact that the statutory provision does not use the word "inventory" is immaterial. The statutory language requires what amounts to an inventory.

Furthermore, as explained later in this opinion, the Modified Trust Code (MTC) is applicable in this case. Therefore, it is unnecessary to determine whether the trust agreement also mandates an inventory.

Further, we observe that the fourteenth article of the trust agreement states, in relevant part:

> "The Trustees may provide a statement of properties in the Trust, along with receipts and disbursements for the covered period, to the Grantor during his lifetime, provided there are assets in this Trust other than beneficiary designations under life insurance policies and a nominal amount of cash. After the death of the Grantor, the Trustees shall render such a statement of account."

Consequently, following Thomas's death, appellants, as co-trustees, were required to provide a statement of account that included a statement of the properties in the trust. This effectively means an inventory. However, since the MTC requires an inventory, this Court does not need to determine whether the trust agreement also imposes this requirement. Appellants have not demonstrated that the probate court erred in requiring them to furnish an inventory.

## E.  TRUSTEE FEES

Appellants next argue that the trial court erred in declining to require Pilarski to pay trustee fees. However, appellants have again failed to cite any legal authority in support of their contention. Instead, appellants appear to disagree with how the trust was drafted and whether it makes "sense." That is not a legal basis on which this Court may grant relief. Because appellants have failed to sufficiently brief their alleged claim of error and explain the legal basis on which we could afford any relief, appellants have abandoned this argument. *Seifeddine*, 327 Mich App at 519-520.

## F.  AUTHORITY TO AUCTION PERSONAL PROPERTY

Appellants next challenge the trial court's determination that they improperly auctioned off items of personal property and thereby deprived estate beneficiaries of the opportunity to take possession of those items.

The interpretation of a will is reviewed de novo as a question of law. *In re Raymond Estate*, 483 Mich 48, 53; 764 NW2d 1 (2009). Unambiguous language in a will is enforced as written. *Id*. at 52.

In its March 28, 2023 ruling from the bench, the trial court noted that appellants auctioned off items of personal property in October 2021, before the estate for the will was opened. The trial court then quoted the second article of Thomas's will, which states:

> I give, devise and bequeath my household furniture, books, musical instruments, watches, jewelry, clothing and other articles of household, domestic or personal use or adornment, as well as my automobile, exclusive of antique furniture and sporting equipment, share and share alike, to JOE LIS, STELLA LIS, FRANK LIS, BURNICE KANOPSKI, JENNY SEMEAR, CARL RYBINSKI, VICTOR RYBINSKI, STEVE RYBINSKI, ROBERT RYBINSKI, JULIE OGINSKI and MARY HERC, without claim, their issue to take such items by right or representation if any of them shall have predeceased me.

The trial court stated that the will beneficiaries "didn't even get a chance because those things were auctioned off, because the will—the estate wasn't even opened at the time of the auction." The court later remarked that:

> what should have happened is when the trust was filed, the will should have been filed as well. Because as it relates to those specific items that I've already listed on this record, they were not pour-over items. The remainder of the will provided for pour-over items, but those heirs that are still alive did not have the opportunity to decide who gets the automobile. Remember where that went? Not to an heir. They didn't have the opportunity to look for certain books. They didn't have the opportunity to actually go and get some of the furniture in this matter. All of those things were put up for auction. That is not the terms and conditions of the will. And that's upsetting to this [c]ourt.
>
> When you are appointed a trustee you have a fiduciary duty to protect the trust and the beneficiaries. There are actions that you must take, and actions that you should refrain from taking.

The trial court's April 13, 2023 order contained language consistent with the bench ruling. The order stated that appellants failed to timely file an estate relating to Thomas's will and "[c]aused personal property belonging to and to be distributed through the related Thomas Lis Estate to be auctioned off by the [t]rust, thereby depriving rightful [estate] beneficiaries of those items of the opportunity to take possession of them . . . ."

Appellants maintain that they had the authority to auction personal property pursuant to the terms of the trust and the will. In challenging the trial court's finding, appellants quote the third article of the will, which states, in relevant part:

> I give, devise and bequeath all the rest, residue and remainder of my property of whatever kind and wherever located that I own at my death or that I have any right to or interest in, including any of the foregoing gifts in this Will which for any reason fail to take effect, but excluding any property over which I shall then have any power of appointment (it being my intention not to exercise any power of appointment I may have except as it may be exercised specifically by

other provisions of this Will), all of which is herein referred to as my residuary estate, to STANLEY R. LIS and DAVID M. DELANEY, as Trustees under a certain Trust Agreement previously executed by me as Grantor, bearing date of _____, A.D. 1996, to be held, managed and distributed upon the terms, provisions and conditions as provided in said Trust Agreement as it now exists or as it may be subsequently be [sic] amended.

Appellants also quote language from the seventh article of the trust agreement stating, in relevant part, that "[t]he Trustees are hereby vested with full and complete title to all of the property and estate embraced within the Trusts hereof . . . ." Appellants contend that, in selling the personal property, they acted in reasonable reliance on the terms of the will and the trust agreement. They cite MCL 700.7906, which states, "A trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a trust beneficiary for a breach of trust to the extent the breach resulted from the reliance."

The trial court correctly understood that the second article of the will specified a gift of certain categories of household personal property to named beneficiaries of the estate. It stated that "their issue may take such items by right of representation if any of them predecease [Thomas]." These household items would only be subject to the pour-over provision in the third article of the will if the gifts failed.

Appellants conducted an auction of the personal property before the will was filed with the estate. This action disregarded the terms of the will, which provided for the gift of personal property to the named beneficiaries. Appellants could not have reasonably relied on the terms of the trust agreement, as the personal property items only transferred to the trust if the gifts to the beneficiaries failed. Thus, appellants have not demonstrated any error by the trial court regarding this issue. *In re Raymond Estate*, 483 Mich at 53.

## G. MCL 700.8206(1)(D)

Appellants next argue that MCL 700.8206(1)(d) required the trial court to make findings of fact regarding whether the trust agreement contains a clear indication of an intent contrary to the applicability of the MTC to trusts created before the effective date of the MTC. Appellants note that the MTC created new trustee duties that are not contained in the trust agreement, which was executed before the effective date of the MTC. They contend that the trial court erred in failing to make findings of fact required by MCL 700.8206(1)(d). Appellants' argument fails because it is based on an incorrect characterization of what MCL 700.8206(1)(d) provides.

"The MTC, MCL 700.7101 *et seq.*, which concerns trusts, is Article VII of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*; the MTC became effective on April 1, 2010, which was 10 years after EPIC itself went into effect." *In re Pollack Trust*, 309 Mich App 125, 135; 867 NW2d 884 (2015). MCL 700.8206(1)(a) provides, "The amendments and additions to article VII enacted by the amendatory act that added this section apply to all trusts created before, on, or after that effective date." This means "that the MTC applies to trusts that were created before, on, or after the effective date of the MTC, thereby encompassing all trusts . . . ." *In re Pollack Trust*, 309 Mich App at 138. The MTC thus applies to the trust in this case, even though the trust was created on July 7, 1996, before the April 1, 2010 effective date of the MTC.

In arguing that the trial court was required to making findings of fact regarding the applicability of the MTC, appellants rely on MCL 700.8206(1)(d), which states,

> Any rule of construction or presumption provided in the amendments and additions to article VII enacted by the amendatory act that added this section applies to trust instruments executed before that effective date unless there is a clear indication of a contrary intent in the terms of the trust.

This provision pertains to rules "of construction or presumption" set forth in the MTC, i.e., such rules apply to trusts instruments executed before the effective date of the MTC unless the trust instrument contains a clear indication of a contrary intent. But appellants' argument does not refer to any specific rule of construction or presumption that is contrary to any specific provision of the trust. Appellants' argument concerns new trustee duties imposed by the MTC, not any rule of construction or presumption. In quoting MCL 700.8206(1)(d), appellants omit the key phrase, "[a]ny rule of construction or presumption," thereby mischaracterizing the meaning of MCL 700.8206(1)(d). Hence, appellants' argument that the trial court erred in failing to make findings of fact required by MCL 700.8206(1)(d) lacks merit. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position." *Seifeddine*, 327 Mich App at 519. Appellants have abandoned this argument by failing to adequately brief and support their argument. *Id*. at 519-520.

## H. RETROACTIVE APPLICATION OF THE MTC

Appellants next argue that the retroactive application of the MTC would impair their vested rights and thereby violate the state constitutional prohibition on the impairment of the obligation of contracts.

This Court reviews constitutional issues de novo. *Aguirre v Michigan*, 315 Mich App 706, 713; 891 NW2d 516 (2016).

Appellants' briefing on this issue is cursory. They repeat previously stated facts but provide scant analysis. They announce what the issue is and cite some caselaw for various propositions but offer virtually no substantive analysis applying the law to the facts of the case to explain why they believe a constitutional violation occurred. Appellants cannot rely on this Court to make their arguments for them. *Seifeddine*, 327 Mich App at 521. Their "failure to adequately brief the issue constitutes abandonment." *Id*. In any event, their argument fails on the merits.

The Michigan Constitution prohibits laws that impair the obligations of contracts. Const 1963, art 1, § 10; *Aguirre*, 315 Mich App at 714. Under this constitutional protection, "vested rights acquired under a contract may not be destroyed by subsequent state legislation." *Aguirre*, 315 Mich App at 715 (quotation marks and citation omitted).

Appellants note that the trust was created in 1996, the MTC went into effect in 2010, and the MTC created new trustee duties. But appellants did not have any vested right as co-trustees before the effective date of the MTC. In the context of EPIC and the MTC, this Court has held that a right is vested if it is "so fixed that it is not dependent on any future act or contingency." *In re Pollack Trust*, 309 Mich App at 140. Appellants did not become co-trustees until Thomas died on November 3, 2020, more than 10 years after the April 1, 2010 effective date of the MTC. While

Thomas was still alive, he could have modified or revoked the trust agreement, or appellants could have decided that they did not wish to serve as successor co-trustees. These possibilities are reflected in the trust agreement. The fourth article states, in relevant part, "Upon the death, incapacity, removal or resignation of STANLEY R. LIS or DAVID M. DELANEY to serve as Trustees hereunder, the Grantor may appoint a Successor Trustee." The eleventh article of the trust agreement provides, in relevant part, "The Grantor shall have the power at any time during his lifetime by an instrument in writing delivered to the Trustees to modify, alter, amend or revoke this Agreement, in whole or in part . . . ."

In sum, as of the effective date of the MTC, appellants had no right "that was so fixed that it could not be changed by a future act or contingency." *In re Pollack Trust*, 309 Mich App at 142. Accordingly, appellants held no fixed or vested right as co-trustees that has been destroyed by the MTC, and they thus cannot establish an unconstitutional impairment of a contractual obligation.

## I. HARM TO THE TRUST

Appellants argue that the trial court erred by failing to make a finding that the trust suffered a loss, suggesting that such a finding was essential for the court's orders. However, they overlook the fact that the trial court explicitly found at the end of the trial that appellants had harmed the trust property through their actions and inactions. Furthermore, in determining that appellants were personally liable for the attorney fees incurred by both themselves and the appellees, the court specifically found that appellants "caused the trust and the estate of Mr. Lis to suffer losses."

Appellants disregard these findings and do not explain how they are entitled to any relief on appeal in light of this evidence, which undermines their argument. Because they have failed to present a coherent explanation for their claim of relief, we conclude that they have abandoned this argument on appeal. *(Seifeddine*, 327 Mich App at 519-521.)

## J. DISTRIBUTION FORMULA

Appellants next challenge the distribution formula adopted by the trial court. We review the probate court's factual findings for clear error, but we review the probate court's dispositional rulings for an abuse of discretion. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). An abuse of discretion occurs when the court "chooses an outcome outside the range of reasonable and principled outcomes." *Id.* "The interpretation of a trust agreement is . . . a question of law reviewed de novo on appeal." *Brown Trust*, 312 Mich App at 693. Our task is to "ascertain and give effect to the settlor's intent" by "looking to the words of the trust itself." *Id.*

Here, the trust agreement states that the trustee shall:

…add the accumulated income to the body or corpus of the Trust estate, and shall distribute to those of the following-named beneficiaries who are then living or, by right of representation, to the issue of any of them who shall then be deceased, outright and free of trust, that portion of the corpus and undistributed income of the Trust property and estate specified following their respective names . . . .

After listing the 11 named beneficiaries, the trust agreement provides as follows with respect to the distribution of shares of deceased named beneficiaries who died without children:

PROVIDED, HOWEVER, that if any of the above-named beneficiaries shall have failed to survive to the date of distribution contemplated herein leaving no issue surviving him or her then, in that event, the share which would otherwise have been distributed to such deceased beneficiary shall be equally divided among, added to the shares of, and distributed to the above-named beneficiaries still living, and by right of representation, to the issue of him, or her, who shall then be deceased.

The trial court determined that the trust estate to be distributed would be divided into seven equal shares. This includes one share for each of the four currently surviving named beneficiaries and one share for each of the three predeceased named beneficiaries who have surviving descendants. The share allocated for each of the predeceased named beneficiaries with living descendants would be divided equally among their respective descendants. For example, if a predeceased named beneficiary has five living descendants, their share would be divided equally among those five individuals. Similarly, if another predeceased named beneficiary has two living descendants, their share would be divided equally between those two individuals.

This approach is generally consistent with "per stirpes" distribution. The term "per stirpes" means "by roots or stocks" and indicates that the property is "[p]roportionately divided between beneficiaries according to their deceased ancestor's share." *Black's Law Dictionary* (12th ed). In contrast, the term "per capita" means "by the head" and indicates that the property is "[d]ivided equally among all individuals, usu. in the same class." *Black's Law Dictionary* (12th ed). "Representation" may mean, as relevant to this context, the "assumption by an heir of the rights of his or her predecessor." *Black's Law Dictionary* (12th ed).

Before EPIC was enacted, this Court held that "[i]t is clear to us that the phrase 'in equal shares to the beneficiaries of the Trust living at that time, by right of representation' calls for distribution per stirpes with equality among the stirpes." *In re Woodworth Trust*, 196 Mich App 326, 328; 492 NW2d 818 (1992). The presumptive meaning of the phrase "by representation" is different under EPIC. MCL 700.2718 provides in relevant part as follows:

(1) If an applicable statute or a governing instrument calls for the property to be distributed "by representation" or "per capita at each generation", the property is divided into as many equal shares as there are surviving descendants in the generation nearest to the designated ancestor that contains 1 or more surviving descendants and deceased descendants in the same generation who left surviving descendants, if any. Each surviving descendant in the nearest generation is allocated 1 share. The remaining shares, if any, are combined and then divided in the same manner among the surviving descendants of the deceased descendants as if the surviving descendants who were allocated a share and their surviving descendants had predeceased the distribution date. This rule of construction applies to documents originally created on and after April 1, 2000, and to all instruments amended on and after April 1, 2000, that use the phrase "by representation" or "per capita at each generation". If an amendment uses either phrase, the rule of this section applies to the entire instrument.

(2) If a governing instrument calls for property to be distributed "per stirpes", the property is divided into as many equal shares as there are surviving children of the designated ancestor and deceased children who left surviving descendants. Each surviving child, if any, is allocated 1 share. The share of each deceased child with surviving descendants is divided in the same manner, with subdivision repeating at each succeeding generation until the property is fully allocated among surviving descendants.

(3) For the purposes of subsections (1) and (2), a deceased individual who left no surviving descendant is disregarded, and an individual who leaves a surviving ancestor who is a descendant of the designated ancestor is not entitled to a share.

However, the statutory rule of construction that "by representation" is presumed to indicate per capita distribution only applies to documents created or amended on or after April 1, 2000. MCL 700.2718(1). The trust in the present case was created July 7, 1996, and there is no indication that it was subsequently amended. Thus, MCL 700.2718(1) is inapplicable in this case. The language in the present trust is consistent with language that this Court has previously concluded demonstrated an intent to distribute per stirpes, and the trial court therefore did not abuse its discretion by ruling as it did with respect to the distribution formula. *In re Woodworth Trust*, 196 Mich App at 328.

## K. REASONABLE COMPENSATION

Appellants argue that the trial court made errors by not allowing reasonable compensation for the co-trustees to be based on a percentage of the estate's value, by completely denying trustee fees for David, and by ruling that the appellants cannot use trust funds to pay their attorney fees. However, appellants only claim that these rulings were incorrect without addressing the trial court's reasoning or providing relevant binding authority to support their assertions. They rely solely on an Ohio statute to argue that trustee fees should be calculated as a percentage of the estate's value. This case is governed by Michigan law. Therefore, again, appellants have effectively abandoned this argument due to their failure to adequately brief their claims and to address the reasons behind the trial court's decisions. *Seifeddine*, 327 Mich App at 519-521.

## L. SANCTIONS

Appellants next argue that the trial court erred in awarding sanctions against them on August 28, 2023. However, it appears that appellants are attempting to challenge a decision by the trial court that occurred after the latest of the two orders involved in the present appeal and after appellants had already filed their claims of appeal with respect to both of those trial court orders in this Court. Appellants have not sought a separate appeal regarding the August 28, 2023 trial court order. "[A] party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders." *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009) (quotation marks and citation omitted; alteration in original). However, appellants' argument involves a *subsequent* order rather than a prior order. Appellants have not attempted to explain how this issue could be properly before this Court, and they have therefore abandoned this issue. *Seifeddine*, 327 Mich App at 519-522.

## M. ATTORNEY FEES

Next, appellants again assert that the trust did not suffer a loss and that the trial court thus erred in surcharging appellants attorney fees. Appellants claim that the trial court awarded actual attorney fees instead of reasonable attorney fees. However, appellants again mischaracterized the trial court's rulings. The trial court expressly stated that it was awarding reasonable attorney fees and explained its reasoning for finding the fees to be reasonable. This argument is abandoned because appellants have entirely failed to address the actual basis for the trial court's ruling. *Seifeddine*, 327 Mich App at 522. Appellants also repeat their assertion that the trust did not suffer a loss without actually addressing the trial court's ruling that the trust did suffer a loss. Appellants merely present unsupported assertions and have not provided any cogent basis on which this Court could grant any appellate relief. This argument is thus also abandoned. *Id.*

## N. EVIDENTIARY HEARING

Appellants further argue that the trial court abused its discretion in failing to hold an evidentiary hearing on the requests for attorney fees. However, it is evident from appellants argument that they actually seek a further evidentiary hearing on whether the trust suffered a loss and they essentially repeat their earlier assertions on this issue. Appellants ignore that the trial court's finding that loss occurred was based on the evidence presented at trial. Because it is again impossible to discern the basis of appellant's alleged claim of error and appellants have again failed to actually address the basis of the trial court's ruling when attempting to set forth their appellate argument, this issue is also abandoned. *Seifeddine*, 327 Mich App at 519-522.

## O. REMOVAL

Appellants assert that "the trustees did not commit a serious breach of trust or persistently fail to administer the trust effectively" and that the trial court erred by removing appellants as co-trustees because such a decision was not mandated by MCL 700.7706. A probate court's decision to remove a trustee is reviewed for an abuse of discretion. *In re Conservatorship of Murray*, 336 Mich App at 240. Here, appellants fail to acknowledge the evidence of their persistent and serious breaches of trust that the trial court found had occurred. Moreover, the fact that a different result could also have been reached based on the evidence does not establish that the trial court abused its discretion by reaching the conclusion that it did. Inherent in the abuse of discretion standard is the recognition that there may be more than one "permissible" result. *Hill v City of Warren*, 276 Mich App 299, 309; 740 NW2d 706 (2007). "An abuse of discretion involves far more than a difference in judicial opinion. Rather, an abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Shawl v Spence Bros, Inc*, 280 Mich App 213, 220-221; 760 NW2d 674 (2008) (quotation marks and citations omitted). Appellants have therefore not established error requiring reversal on this ground.

## P. APPELLATE SANCTIONS

In their respective appellate briefs, appellants and Abbey each request sanctions against the other. However, a request for appellate sanctions must be brought in a separately filed motion rather than in an appellate brief. *Barrow v Detroit Election Comm*, 305 Mich App 649, 683-684; 854 NW2d 489 (2014), citing MCR 7.216(C)(1) and MCR 7.211(C)(8). A party may file such a

motion "within 21 days after the date of this Court's opinion disposing of these appeals." *Barrow*, 305 Mich App at 684, citing MCR 7.211(C)(8).  We therefore "deny the request[s] for appellate sanctions without prejudice." *Barrow*, 305 Mich App at 684.

Affirmed.  Appellees may tax costs.  MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Michael J. Riordan
/s/ Sima G. Patel